# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS HONCHARIW, Trustee, Honchariw Family Trust,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF STANISLAUS,<br><br>Defendant. | Case No. 1:21-cv-00801-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>(Doc. 15) |

## I. INTRODUCTION

The matter before the Court is Defendant County of Stanislaus' Motion to Dismiss Plaintiff's Verified Supplemental and Amended Complaint[1] (the "Motion"). (Doc. 15.) On January 14, 2022, Plaintiff Nicholas Honchariw filed his opposition (Doc. 17), and Defendant filed its reply on January 25, 2022 (Doc. 18). Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, the Motion was taken under submission on the papers. (Doc. 16.) On September 22, 2022, the parties consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Docs. 26–28.)

Having considered the briefing, and for the reasons set forth below, Defendant's Motion will be granted with leave to amend Plaintiff's Second and Third Causes of Action.

---

[1] The operative pleading, Plaintiff's Verified Supplemental and Amended Complaint ("Supp. Compl."), is attached to Defendant's Notice of Removal (Doc. 1) as Exhibit 36. (*See* Doc. 1 at 237–45.)

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff, in his capacity as trustee for the Honchariw Family Trust, sought to divide land in the Knights Ferry area of Stanislaus County into a development of several residential lots and one undeveloped parcel (Supp. Compl. ¶ 1). *See also Honchariw v. Cty. of Stanislaus,* 51 Cal. App. 5th 243, 246–47 (2020).[3] The Board of Supervisors of the County of Stanislaus approved the vesting tentative map application for Plaintiff's development subject to several conditions of approval. *Id*. at 249. One of these conditions of approval was a site improvement request for an extension of fire hydrants to provide a higher level of fire protection for the development. *Id*. at 250.

This current dispute between the parties stems from Plaintiff's submission of a proposed final subdivision map along with plans and specifications in accordance with Defendant's previously requested conditions of approval in April 2016 (Supp. Compl. ¶ 11). *See also Honchariw,* 51 Cal. App. 5th at 250. In November 2016, Stanislaus County's Department of Public Works sent Plaintiff's engineers a letter stating it could not approve the proposed plans for the water system without further information about several items, including fire hydrants. *Id*. at 250–51. At a meeting in March 2017 with the Department, Plaintiff was informed that his proposed plans did not comply with the conditions of approval. *Id*. at 251. The Department interpreted the conditions of approval as requiring a fire suppression system based on functional fire hydrants, which were hydrants that could meet fire flows for volume and pressure required by the California Fire Code. *Id*. at 251–53. In June and July of 2017, Plaintiff and the Department exchanged correspondence in an effort to resolve their dispute. *Id*. at 251–52.

Having reached an impasse, in August 2017, Plaintiff filed a Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages in state court raising three state law claims (*see* Doc. 1 at 8–16). *Honchariw*, 51 Cal. App. 5th at 253. In May 2018, the trial court issued a judgment denying the petition, and Plaintiff appealed. *Id*. In June 2020, the California

---

[2] In considering a motion to dismiss, the Court must accept as true all of the well-pleaded factual allegations contained in the complaint. *See, e.g., Rotkiske v. Klemm*, 140 S. Ct. 355, 359 n.1 (2019) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

[3] The Court takes judicial notice of the facts and proceedings in *Honchariw v. Cty. of Stanislaus*, 51 Cal. App. 5th 243 (2020). *See* Fed. R. Evid. 201(c)(1) (the court may take judicial notice on its own); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). As discussed below, this California Court of Appeal decision is directly related to the instant case.

Court of Appeal reversed, concluding that Defendant had misinterpreted the conditions of approval and remanded the matter to the trial court to determine the terms of the writ of mandate, which, at a minimum, would require Defendant and its officials to interpret the conditions of approval in accordance with its opinion (Supp. Compl. ¶ 1). *Honchariw*, 51 Cal. App. 5th at 246, 256.

Pursuant to a stipulation between the parties, in April 2021, Plaintiff filed a Verified Supplemental and Amended Complaint in state court asserting the three state and federal claims at issue here arising from Defendant's rejection of his April 2016 proposed final subdivision map for failure to comply with the conditions of approval. Plaintiff alleges (1) a violation of California Government Code § 815.6 (Supp. Compl. ¶¶ 10–14); (2) inverse condemnation and temporary taking under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 19 of the California Constitution; and 42 U.S.C. § 1983 (Supp. Compl. ¶¶ 15–21); and (3) denial of his substantive due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article 1, Section 7 of the California Constitution; and 42 U.S.C. § 1983 (Supp. Compl. ¶¶ 22–25).

In May 2021, Defendant removed the action to this federal court. (Doc. 1.) On December 3, 2021, Defendant filed the present motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff's claims were procedurally and/or substantively defective. (Doc. 15.)

### III.   LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "'tests the legal sufficiency of a claim,'" and dismissal is "proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). "To survive a motion to dismiss, the plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At this stage, the Court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Great Minds v. Office Depot,*

*Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. "'[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Twombly*, 550 U.S. at 562.

In resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1030–31 (9th Cir. 2008) (internal quotation marks omitted). "'[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

To the extent the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.,* 911 F.2d 242, 247 (9th Cir. 1990); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Federal Rule of Civil Procedure 15(a)(2) advises that "[t]he court should freely give leave when justice so requires." "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). However, "that liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016).

### IV.   DISCUSSION

#### A.   **Plaintiff Failed to Comply with the California Government Claims Act**

##### 1.   **Legal Standard**

California's Government Claims Act ("the CGCA") "sets out a comprehensive scheme of governmental liability and immunity statutes." *State Dept. of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 348 (2015). Under the CGCA, "the liability of a public entity for an injury is statutory." *Leon v. Cty. of Riverside*, 64 Cal. App. 5th 837, 846 (2021). The "cornerstone" of the CGCA, California Government Code § 815(a), states that "[a] public entity is not liable for an injury" unless "otherwise provided by statute." *Id*.

Government Code § 815.6 provides that, "[w]]here a public entity is under a mandatory duty

4

imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Thus, a public entity may be liable under § 815.6 when (1) "a mandatory duty is imposed by enactment;" (2) "the duty was designed to protect against the kind of injury allegedly suffered;" and (3) "breach of the duty proximately caused injury." *State Dept. of State Hosps.*, 61 Cal. 4th at 348.

Timely written presentation of the claim to the public entity and its rejection of the claim are prerequisites to maintaining a suit for damages against the entity under the CGCA. *Nguyen v. L.A. Cty. Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 732 (1992); *see e.g.,* Cal. Gov. Code § 945.4 ("no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board"); Cal. Gov. Code § 905 (requires the presentation of "all claims for money or damages against local public entities" subject to exceptions not relevant here). The CGCA's claims presentation mandate is more than simply "procedural;" rather, "it is a condition precedent to plaintiff's maintaining an action against defendant," and is, "in short, an integral part of plaintiff's cause of action." *State of Cal. v. Super. Ct. (Bodde)*, 32 Cal. 4th 1234, 1240 (2004) (internal quotation marks omitted).

"The purpose of the claims statutes is not to prevent surprise, but 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation,'" and also to "'enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.'" *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 738 (2007). And "'[i]t is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim.'" *Id*.

Thus, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *Bodde*, 32 Cal. 4th at 1243; *see also Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Otherwise, a plaintiff's complaint "is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." *Bodde*, 32 Cal. 4th at 1243. Exceptions exist for claims of inverse condemnation brought under the Takings Clause of the California Constitution, Cal. Gov. Code § 905.1, federal causes of action, such as suits brought

under 42 U.S.C. § 1983, *Willis v. Reddin*, 418 F.2d 702, 704–705 (9th Cir. 1969), and where money damages are incidental to injunctive or declaratory relief, *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 760 (2002).

### 2. Analysis

Defendant contends Plaintiff's First Cause of Action alleging a violation of Government Code § 815.6 should be dismissed because Plaintiff failed to comply with the CGCA's written presentation mandate.[4] (*See* Doc. 15 at 17–19.) Plaintiff asserts that his claim falls within a "well-established" exception to the presentation requirement because his demand for money damages was incidental to dismissal of Defendant's demands. (Doc. 17 at 10–11 (quoting *Eureka Teacher's Ass'n. v. Bd. of Educ.*, 202 Cal. App. 3d 469, 474–75 (1988); *Minsky v. City of L.A.*, 11 Cal. 3d 113, 120–22 (1974)). Plaintiff states that "[his] lengthy discussions with the [County's Department of Public Works] made his claims clear months before any litigation, and [his] petition for writ of mandate expressly reserved a claim for damages incidental to the petition." (Doc. 17 at 11.)

Plaintiff's contention that he spoke with County officials is insufficient to demonstrate compliance with the claim presentation requirement. As previously stated, to "'provide the public entity sufficient information to enable it to adequately investigate claims and to settle them if appropriate, without the expense of litigation,'" *City of Stockton*, 42 Cal. 4th at 738, Plaintiff was compelled to timely present his claim in writing to Defendant. *See Bodde*, 32 Cal. 4th at 1240; *Nguyen*, 8 Cal. App. 4th at 732; Cal. Gov. Code §§ 905, 945.4. He failed to do so. Plaintiff must therefore allege facts excusing adherence to the CGCA's presentation requirement.

Plaintiff correctly notes that courts have held that non-compliance with the requirement is permissible where the primary relief sought is clearly injunctive or declaratory relief and money damages, if any, are merely incidental. *See, e.g.*, *Gatto*, 98 Cal. App. 4th at 760 (action for a large damage award and no injunctive and declaratory relief was required to comply with the presentation requirement); *Eureka Teacher's Ass'n.*, 202 Cal. App. 3d at 475 (action for mandamus to which

---

[4] Defendant asks the Court to take judicial notice of the Stanislaus County claim form found on the County's webpage. (Doc. 15 at 19 n.6.) Defendant's request is granted pursuant to Rule 201 of the Federal Rules of Evidence. The Court hereby takes judicial notice of the claim form because it is made "publicly available" by a government entity, and "neither party disputes the authenticity of the [webpage] or the accuracy of the information displayed therein." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

damages sought were incidental, and therefore did not have to comply with the presentation requirement). However, Plaintiff's complaint makes clear that his "*chief purpose*" is to recover damages. *Gatto*, 98 Cal. App. 4th at 760. Notably, the prayer for relief contained in the complaint seeks money damages as to all three claims raised against Defendant and simply adds a request for "other and further relief as the court may deem proper" as to each claim. (*See* Doc. 1 at 243–44.) It therefore appears Plaintiff is attempting to bypass the CGCA through creative pleading. *See, e.g., Loehr v. Ventura Cty. Cmty. C. Dist.*, 147 Cal. App. 3d 1071, 1081 (1983) ("self-styled causes of action for mandamus and injunctive relief" added to a complaint alleging three causes of action claiming monetary damages do not change the primary purpose of the action). The Court finds that Plaintiff's prayer for damages is not clearly incidental to his claim for injunctive or declaratory relief.

In sum, Plaintiff is unable to cite an applicable exception "excusing compliance with the claim presentation requirement." *Bodde*, 32 Cal. 4th at 1243; *Mangold*, 67 F.3d at 1477. He was compelled to file a timely written claim as a prerequisite to initiating his lawsuit. Therefore, Plaintiff's failure to comply with the CGCA's mandatory requirements is "fatal" to his claim. *Nguyen*, 8 Cal. App. 4th at 732. The Court finds that amendment of the complaint would be futile. *See Ebner*, 838 F.3d at 968. Plaintiff acknowledges that he did not comply with the CGCA's presentation provision and amending his complaint cannot cure this deficiency. For these reasons, the Court DISMISSES his First Cause of Action without leave to amend.

### B. Plaintiff Fails to State a Cognizable Takings Claim

"The Takings Clause of the Fifth Amendment states that private property [shall not] be taken for public use, without just compensation." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (internal quotation marks omitted). "A classic taking occurs when the 'government directly appropriates private property or ousts the owner from his domain.'" *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). Beyond a classic taking, the Supreme Court has recognized that if a regulation goes too far, it will qualify as a taking. *Bridge Aina Le'a, LLC*, 950 F.3d at 625 (citing *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

Inverse condemnation claims predicated on alleged temporary regulatory takings are

governed by the Supreme Court's holding in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) ("*Penn Central*").  "The inquiry into whether a taking has occurred is essentially an 'ad hoc, factual' inquiry." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984). When the government has "restricted a property owner's ability to use his own property," *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021), "a court must evaluate the action under the three-factor test announced in [*Penn Central*] to determine whether it constitutes a 'regulatory taking.'" *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1281 (9th Cir. 2021).

Under *Penn Central*, the Court evaluates the following three factors of "particular significance":  (1) "[t]he economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." *Penn Central*, 438 U.S. at 124.  "'Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,' . . . and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values." *Id*. (quoting *Pa. Coal Co.*, 260 U.S. at 413).

"The first and second *Penn Central* factors are the primary factors." *Bridge Aina Le'a, LLC*, 950 F.3d at 630 (citing *Lingle*, 544 U.S. at 538–39).  However, *Penn Central* sets forth no "set formula" to determine whether a regulatory action is "'functionally equivalent to the classic taking.'" *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010).  Instead, the outcome of the inquiry "'depends largely upon the particular circumstances [in the] case' at hand." *Bridge Aina Le'a, LLC*, 950 F.3d at 630.

With these principles in mind, the Court considers whether Plaintiff states a plausible claim of an impermissible regulatory taking, his Second Cause of Action.

        **1.**        **Economic Impact and Interference with Investment-Backed Expectations**

            **a)**        **Legal Standard**

The first consideration is the economic impact of Defendant's action on Plaintiff, the property owner.  In analyzing this factor, the Court "compare[s] the value that has been taken from

the property with the value that remains in the property." *Bridge Aina Le'a, LLC*, 950 F.3d at 630–31 (internal quotation marks omitted). There is "'no litmus test'" in undertaking this "value comparison," which, as previously mentioned, "aims 'to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain.'" *Id*. at 631 (quoting *Lingle*, 544 U.S. at 539).

With regard to the second factor, the Court uses an objective analysis to evaluate interference with the reasonable investment-backed expectations of the property owner. *Bridge Aina Le'a, LLC*, 950 F.3d at 633. The "focus is on interference with reasonable expectations." *Id*. "'Distinct investment-backed expectations' implies reasonable probability, like expecting rent to be paid, not starry eyed hope of winning the jackpot if the law changes." *Guggenheim*, 638 F.3d at 1120. "Thus, 'unilateral expectation[s]' or 'abstract need[s]' cannot form the basis of a claim that the government has interfered with property rights." *Bridge Aina Le'a, LLC*, 950 F.3d at 633–34 (quoting *Ruckelshaus*, 467 U.S. at 1005).

Furthermore, "what is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Bridge Aina Le'a, LLC*, 950 F.3d at 634 (internal quotation marks omitted). For example, "'[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end[.]'" *Id*. (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993)).

    **b) Analysis**

Plaintiff's complaint pleads the following:

> 4. Upon more comprehensive investigation, Plaintiff determined that the costs of a municipal-sized fire suppression system as required by [Defendant] could itself exceed $500,000 over and above the $300,000 which he anticipated for the water line extension and road widening required by his Conditions of Approval. This would render development of the four 1-acre parcels to be served by the water line extension wholly uneconomic and kill it.
>
> 5. The Trust could not fund, or finance, or bond completion, of the improvements being required by [Defendant].

> 6. As a direct result, [Plaintiff] was forced to halt the project. He could not finalize the subdivision by recordation of a final map and suspended all related efforts, such as withdrawing his application for a Department of Real Estate subdivision sales report. [Plaintiff] was deprived of meaningful economic use of, and income from, the property in frustration of his distinct investment-backed expectations for the property.
>
> 7. In May 2018, shortly before expiration of the Vesting Tentative Map, [Plaintiff] paid the necessary fees and filed an application for a 1-year extension to keep the Vesting Tentative Map alive. If the extension were denied, the Vesting Tentative Map would expire. [Plaintiff] would have to begin the subdivision process anew, and since [Defendant] had spot re-zoned the portion of the property with the four 1-acre lots in the interim to 5-acre minimum zoning, the same application would no longer comply with local zoning. Development of a single lot would instead not support the cost of the necessary water line extension. The project would die under these limitations.

(Supp. Compl. ¶¶ 4–7.)

Plaintiff also alleges that he obtained and renewed one-year extensions in 2019 and 2020, with the latter extension expiring in May 2021, and that the delay has incurred significant costs, such as carrying costs for the property, maintenance and upkeep, extra engineering, and obtaining extensions. (Supp. Compl. ¶ 8–9.) Plaintiff then alleges the following: he "had expended substantial time, money, and effort since 2002 to subdivide the property;" Defendant "unreasonably and disproportionality burdened" Plaintiff by demanding installation of improvements to the development's fire suppression system; "the extended delay of almost 5 years was not a normal regulatory delay;" and Plaintiff "spot re-zoned" a portion of the property, ultimately "depriving [him] of a critical and anticipated development opportunity." (Supp. Compl. ¶¶ 16–19.)

These conclusory allegations, without more, fall short of setting forth the "value comparison" necessary to indicate any economic impact of Defendant's conduct on Plaintiff's property or demonstrating interference with any reasonable investment-backed expectations that Plaintiff could have formed regarding his property. As the Supreme Court explained in *Penn Central*, "'taking'" challenges have been "held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels have been previously devoted and thus caused substantial individualized harm." *Penn Central*, 438

U.S. at 125. For example, "in instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land, this Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests." *Id.* The Court cited zoning laws as classic examples of land-use regulations "which have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property." *Id.*

Plaintiff makes several barebones allegations regarding expenses he incurred throughout the process of seeking approval for the development of his property. He contends the cost of the fire suppression system as required by Defendant "could . . . exceed $500,000 over and above the $300,000 which he anticipated," and because the Trust cannot finance the requisite improvements, his property has been rendered "wholly uneconomic." (Supp. Compl. ¶ 4–5.) In doing so, Plaintiff makes virtually no attempt to specify how much the value of his property has been reduced. Moreover, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc.*, 508 U.S. at 645. The Ninth Circuit has observed that "diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018) (citing *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127–28 (9th Cir. 2013)). Thus, under *Penn Central*, Plaintiff's sheer allegations Defendant's actions caused him individualized harm in terms of expenses and delay in developing his property are not enough. *Penn Central*, 438 U.S. at 124–25.

Similarly, Plaintiff fails to state a cognizable claim of interference with his investment-backed expectations. This Court's focus is Plaintiff's *reasonable* expectations as to the development of his real property, an endeavor which exists in a field rationally subject to regulation by Defendant. *Bridge Aina Le'a, LLC*, 950 F.3d at 633–34. "Speculative possibilities of windfalls do not amount to 'distinct investment-backed expectations,' unless they are shown to be probable enough to materially affect the price." *Guggenheim*, 638 F.3d at 1120–21. Plaintiff's abstract allegations that his "distinct investment-backed expectations" were frustrated (Supp. Compl. ¶ 6) and that he was deprived "of a critical and anticipated development opportunity" (Supp. Compl. ¶ 19) are

11

insufficient.

"Although a plaintiff's allegations are generally taken as true, the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *see also Caviness*, 590 F.3d at 812. Accordingly, both the first and second factors weigh against finding that a regulatory taking has occurred.

### 2. Character of Governmental Action

The Court next considers the character of Defendant's action. As the Supreme Court stated in *Lingle*, "the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'—may be relevant in discerning whether a taking has occurred." *Lingle*, 544 U.S. at 539 (citing *Penn Central*, 438 U.S. at 124). "The government generally cannot 'forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Bridge Aina Le'a, LLC*, 950 F.3d at 636 (citing *Lingle*, 544 U.S. at 537).

With regard to the third factor, Plaintiff makes several allegations that Defendant acted in an "arbitrary" manner throughout the course of its dealings with him. Plaintiff alleges Defendant's demands for a "municipal-sized fire suppression system with its own water supply" "did not have the character of a discretionary public program simply adjusting the benefits and burdens of economic life broadly to promote the public good." (Supp. Compl. ¶¶ 16–17.) Plaintiff also alleges that the "extended" five-year delay "was the direct, foreseeable and possibly purposeful result of [Defendant's] unrelenting pursuit of demands which were arbitrary and capricious [and/or] willful and deliberate efforts to obstruct the project." (Supp. Compl. ¶ 18.) Lastly, referencing some of the earlier denials by Defendant, Plaintiff alleges Defendant "has a history of obstructing the project." (Supp. Compl. ¶ 19.)

Taking these facts as true, the character of Defendant's actions in arbitrarily requiring a more advanced fire suppression system as a part of Plaintiff's development could be construed as "'physical invasion'" of his property. However, "[e]ven if this factor weighs in favor of finding a

taking, this factor is not alone a sufficient basis to find that a taking occurred." *Bridge Aina Le'a, LLC*, 950 F.3d at 636; *see also id*. at 630 (citing *Lingle*, 544 U.S. at 538–39) ("The first and second *Penn Central* factors are the primary factors."). Because both the first and second *Penn Central* factors weigh against finding that a regulatory taking has occurred, the Court finds that Plaintiff fails to state a cognizable claim.

### 3. Leave to Amend

The Court will grant Plaintiff an opportunity to allege conduct on behalf of Defendant amounting to a regulatory taking, as the pleadings can be cured by the allegation of additional facts as for the first two *Penn Central* factors  *See* Fed. R. Civ. P. 15(a)(2); *Cook, Perkiss and Liehe, Inc.*, 911 F.2d at 247; *Crowley*, 734 F.3d at 977; *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("when a viable case may be pled, a district court should freely grant leave to amend."). Accordingly, the Court DISMISSES Plaintiff's Second Cause of Action *with* leave to amend.

### C. Plaintiff Fails to State a Cognizable Substantive Due Process Claim

"To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). However, "[t]he Supreme Court has 'long eschewed . . . heightened [means-end] scrutiny when addressing substantive due process challenges to government regulation' that does not impinge on fundamental rights." *Id*. at 1088 (quoting *Lingle*, 544 U.S. at 545). "Accordingly, the 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks*, 540 F.3d at 1088 (citing *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008); *see also Matsuda v. City and Cty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) ("state action which 'neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights' will violate substantive due process only if the action is 'not rationally related to a legitimate governmental purpose.'").

Thus, "[w]hen executive action like a discrete permitting decision is at issue, only egregious official conduct can be said to be arbitrary in the constitutional sense:  it must amount to an abuse

of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks*, 540 F.3d at 1088 (internal quotation marks omitted). "Official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary." *Id*. at 1089. For example, the Ninth Circuit has recognized that a meritorious due process claim may exist "where a 'land use action lacks any substantial relation to the public health, safety, or general welfare.'" *N. Pacifica LLC*, 526 F.3d at 484 (citing *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007)).

In his Third Cause of Action, Plaintiff alleges that Defendant's demand for improvements to the development's fire suppression system "was arbitrary and capricious," and/or "a willful and deliberate effort to obstruct the project," given that Defendant "had no basis" to make such a demand. (Supp. Compl. ¶ 23.) Plaintiff further alleges that "[Defendant's] refusal did not substantially advance legitimate state interests" because "[Defendant] lacked any authority or responsibility for the design of the water system" and by trying to require improvements that would render development of the lots "uneconomic," "[Defendant] acted to impede the development of housing" protected by law. (Supp. Compl. ¶ 24.) Finally, Plaintiff alleges that upon approval of his Vesting Tentative Map, he "enjoyed a constitutionally protected right to finalize his project in substantial compliance with the terms of approval," and "[Defendant's] demands for a municipal-sized fire suppression system" denied Plaintiff his rights to due process. (Supp. Compl. ¶ 25.)

Based on the facts alleged in the current pleading, Plaintiff fails to meet the "'exceedingly high burden'" required to show that Defendant or its employees behaved in a constitutionally arbitrary fashion. *See Shanks*, 540 F.3d at 1088. Plaintiff's allegations "do[] no more than present the type of 'run of the mill dispute between a developer and a [county] planning agency' that fail[] to implicate concerns about due process deprivations." *Teresi Inv. III v. City of Mountain View*, 609 Fed. Appx. 928, 930 (9th Cir. 2015). The conduct with which Plaintiff takes issue — "a routine, even if perhaps unwise or legally erroneous, executive decision" to deny a development application due to fire suppression concerns — falls short of qualifying as constitutionally arbitrary. *Shanks*, 540 F.3d at 1089. "It is 'at least fairly debatable'" that Defendant rationally furthered its legitimate concern for public safety in demanding a more comprehensive fire suppression system as a part of

Plaintiff's property development plan. *Id*. "When reviewing a substantive due process challenge, this suffices; our task is not to balance 'the public interest supporting the government action against the severity of the private deprivation.'" *Id*. (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1238 (9th Cir. 1994)). "[I]n a substantive due process case such as this, our concern is with the rationality of a government action regardless of its impact." *Kawaoka*, 17 F.3d at 1238.

However, because the pleadings can be cured by the allegation of additional facts indicating constitutionally arbitrary conduct by Defendant, the Court affords Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Cook, Perkiss and Liehe, Inc.,* 911 F.2d at 247; *Crowley*, 734 F.3d at 977; *Cafasso, U.S. ex rel.*, 637 F.3d at 1058. Therefore, the Court DISMISSES Plaintiff's Third Cause of Action with leave to amend.

## V.   CONCLUSION AND ORDER

F1`or the reasons set forth above, IT IS HEREBY ORDERED that Defendant's motion to dismiss is GRANTED as follows:

1. Plaintiff's First Cause of Action is DISMISSED without leave to amend; and
2. Plaintiff's Second and Third Causes of Action are DISMISSED with leave to amend.

Within twenty-one (21) days, Plaintiff SHALL file: (a) a second amended complaint in accordance with the directives in this order, or (b) a statement that he elects not to proceed with this action. If Plaintiff does not file a second amended complaint within the specified time frame, leave to amend will be withdrawn and the case will be dismissed without further notice.

IT IS SO ORDERED.

Dated:   **November 7, 2022**              /s/ *Sheila K. Oberto*
                                      UNITED STATES MAGISTRATE JUDGE