1
2
3
4
5

**Nicholas Honchariw**
**429 Dubois Lane**
**PO Box 1452**
**Genoa NV 89411**
**(415) 225 3048**
**nh@nhpart.com**
**Ca. SBN 55126**

6
7

**Attorney for Plaintiff**
**Nicholas Honchariw, Trustee**
**Honchariw Family Trust**

8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **NICHOLAS HONCHARIW, TRUSTEE,** ) <br> **HONCHARIW FAMILY TRUST,** ) <br>     **Plaintiff** ) <br> ) <br>         **v.** ) <br> ) <br> ) <br> ) <br> **COUNTY OF STANISLAUS;** ) <br> **BOARD OF SUPERVISORS OF** ) <br> **COUNTY OF STANISLAUS,** ) <br>     **Defendants** ) <br> ) <br> ) <br> ------------------------------------------------------- | **Case No. 1:21-CV-00801-SKO** <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> **Date:**        **March 8, 2023** <br> **Time:**       **9:30 am** <br> **Courtroom: 7** <br> **Judge:**      **Hon. Sheila K. Oberto** |

# TABLE OF CONTENTS

**TABLE OF CONTENTS** i

**TABLE OF AUTHORITIES** ii

**INTRODUCTION** 1

**STANDARD OF REVIEW** 1

**ARGUMENT** 2

**I. Honchariw's claims are based on his vested property rights under his approved Vesting Tentative Subdivision Map, VTM 2006-06** …….………. 2

**II. The takings claim states a cause of action for a temporary regulatory taking**………………………………………………………………...………………4

    **A. The County's refusal to approve Honchariw's improvement plans without its new demands for a fire suppression system in violation of its ministerial duty constituted a taking under a *Lucas* analysis**………………………………………………….…………. 4

    **B. The County's refusal to approve Honchariw's improvement plans without its new demands for a fire suppression system in violation of its ministerial duty constituted a taking under a *Penn Central* analysis**………………………………………...………… 5

**III. Honchariw's allegations that the County's demands were arbitrary and capricious and / or willful and deliberate obstruction state a cause of action for deprivation of substantive due process**……………………..…….. 7

**CONCLUSION** 15

1

# TABLE OF AUTHORITIES

2

3

**Federal Cases:**

4

*Action Apartment Ass'n v. Santa Monica Rent Control Bd.,*
5
509 F.3rd 1020 (9th Cir. 2007) ………………………………………… 17

6
*Allwaste, Inc. v. Hecht,* 65 F.3d 1523 (9th Cir. 1995) ………………………….. 2

7
*Armendariz v. Penman*,
8
75 F.3d 1311 (en banc) (9th Cir. 1996) ……………………………………….. 9,13

9
*Bateson v. Geisse*,
857 F.2d 1300 (9th Cir. 1988) ……………………………………………………8,9
10

11
*Bridge Aina Le'a, LLC v. Land Use Comm.,* (950 F.3d 610 (9th Cir. 2020) ………… 5

12
*Conley v. Gibson*, 355 U.S. 41 (1957) ……………………………………………… 2

13
*Crown Point Development, Inc. v. City of Sun Valley,*
506 F.3d 851 (9th Cir. 2007) ………………………………………………..……. 10
14

15
*Gerhart v. Lake County,*
637 F.3d 1013 (9th Cir. 2010) …………………………………………….……….. .. 8
16

17
*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir. 1997) ……………… 2

18
*Levine v. Diamanthuset, Inc.,* 950 F.2d 1478 (9th Cir. 1991) …………………….. 1

19
*Lingle v. Chevron U.S.A.,*
544 U.S. 528 (2005) ……………………………………………..……..…… 7,9,10
20

21
*Lucas v. South Carolina Coastal Comm'n*, 505 U.S. 1003 (1992) …..…………. 1,4

22
*Murr v. Wisconsin,* 137 S.Ct. 1933 (2017) ………………………………...……… 5

23
.
*North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) …..……….. 1
24

25
*Penn Central Transportation Co. v. City of New York*
438 U.S. 104 (1978) …………………………………………………………...… 5-7
26

27
*Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008) ……………..……………… 10,11

28

ii

1

**State Cases:**

2

3

*Ali v. City of Los Angeles*,
77 Cal.App.4th 246 (1999) ……………………………………….…………… 13

4

5

*Beck Development Co., Inc. v. Southern Pacific Transportation Company*,
44 Cal.App.4th 1160 (1996) ………………………………………………….…… 15

6

*Bright Development v. City of Tracy* (1993) 20 Cal.App.4th 783 ………..……….. 5

7

8

*Honchariw, Ttee v. County of Stanislaus ("Honchariw 2011")*,
200 Cal.App.4th 1066 (2011) …………………………………………………… 2,6,14

9

10

*Honchariw v. County of Stanislaus* (2020) 51 Cal.App.5th 243
("*Honchariw 2020*") Doc. No. 1 at 144……………………………………………passim

11

*Landgate, Inc. v. California Coastal Commission*
17 Cal.4th 1006 (1998) ………………………………………………….…..……… 7

12

13

14

**State Statutes:**

15

Gov. Code § 66474.1 …………………………………………………….…… 3

16

Gov. Code § 66473 …………………………………………….…………….. 3

17

18

Gov. Code § 65589.5 ("Anti-NIMBY Law") ……………….………….……….. passim

19

20

21

22

23

24

25

26

27

28

iii

**INTRODUCTION**

In *Honchariw, Ttee v. County of Stanislaus,* 572 Cal.App.5th 243 (2020) ("*Honchariw 2020*") Doc. No. 1 at 144, the court of appeal held that the County violated Honchariw's statutory vested rights to finalize his approved subdivision, VTM 2006-06, by demanding that he add a full municipal-sized fire suppression system on the water line extension that he was required to construct under the Conditions of Approval for VTM 2006-06. The court determined that the County had "unambiguously" delegated exclusive authority for design of the water line extension, including fire suppression, to the local water district, the Knights Ferry Community Services District ("KFCSD"), so that it had no right to demand improvements. The County had a ministerial duty to approve improvement plans that had been approved by KFCSD and otherwise substantially complied with VTM 2006-06. Honchariw's petition for writ of mandate was granted, and the County was forced to accept his improvement plans as approved by KFCSD.

But the demands had brought the project to a halt for over 4 years, and Honchariw filed this action. In the First Amended Complaint ("FAC"), Honchariw has added a number of specific factual allegations sufficient to state a cause of action both for a taking under the well-established *Penn Central* factors and / or *Lucas* and for deprivation of substantive due process on the basis that the County's demands were arbitrary and capricious and / or willful or deliberate obstruction of his vested property rights to finalize his project.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478,

1482 (9th Cir. 1991), quoting *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In reviewing such a motion, the court must assume all factual allegations to be true and must construe them in the light most favorable to the plaintiff. *North Star*, 720 F.2d at 580.

**ARGUMENT**

**I. Honchariw's claims are based on his vested property rights under his approved Vesting Tentative Subdivision Map, VTM 2006-06.**

The County badly mischaracterizes the property rights which form the basis for Honchariw's claims. His property rights to develop his property by subdivision are not in issue. After the County's initial disapproval of VTM 2006-06 in 2009, he established his statutory rights to develop his property as a residential subdivision in *Honchariw, Ttee v. County of Stanislaus,* 200 Cal.App.4th 1066 (2011) ("*Honchariw 2011*"), and the County was compelled to approve VTM 2006-06 in 2012.

With an approved vesting tentative map, he had statutory vested rights to finalize the project with recordation of a final map on the basis of substantial compliance with the terms of the approved tentative map. This entails compliance with County ordinances, policies, and standards applicable to the project at the time of his submission of a complete subdivision application in 2006, subject to express conditions of approval imposed by the County upon approval of the tentative map in compliance with those ordinances, policies, and standards, free of further demands by the County. While development approval of a tentative map is typically subject to broad discretion by the County under the local version of the California Subdivision Map Act, the approval of improvement plans in satisfaction of those conditions is in contrast a ministerial act where, as here, the plans are in substantial compliance with the approved tentative map:

"A legislative body shall not deny approval of a final or parcel map if it has previously approved a tentative map for the proposed subdivision and if it

finds that the final or parcel map is in substantial compliance with the previously approved tentative map."

Gov. C. § 66474.1. In *Beck Development Co., Inc. v. Southern Pacific Transportation Company,* 44 Cal.App.4th 1160 (1996), the court explained:

> "The approval of a tentative map gives the subdivider certain rights with respect to approval of a final map. Thus, a final map may not be disapproved if it is in substantial compliance with a previously approved tentative map. (Gov. Code Sec. 66474.1). And only those requirements and conditions that were applicable to the subdivision at the time of approval of the tentative map may be considered with respect to the final map. (Gov. Code Sec. 66473) In other words, the time for a local agency to take action with respect to a proposed subdivision is when the tentative map is under consideration and, provided the final map is in substantial compliance with the tentative map and any conditions attached on its approval, the approval of the final map becomes a ministerial act. (*See Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 656.)"

*Id.* at 1199. The County does not question that Honchariw was not required to include a municipal-sized fire suppression system under any local ordinance,  standard, or policy applicable upon approval in 2012. The demands of the County could be legitimate only if required by the Conditions of Approval drafted  by the County and accepted by Honchariw upon approval. Thus Honchariw had a statutory vested right to finalize his subdivision in accordance with ordinances, standards, and policies applicable to the project upon approval in 2012, subject only to the Conditions of Approval for VTM 2006-06. This was expressly affirmed in *Honchariw 2020*.

> "A subdivider may file a 'vesting tentative map' whenever the Subdivision Map Act requires a tentative map. (*Bright Development v. City of Tracy* (1993) 20 Cal.App.4th 783, 792) The vesting tentative map statute was enacted to 'establish a procedure for the approval of tentative maps that will provide statutorily vested rights to a subdivider' (Sec. 66498, subd. (a)) and to 'insure that local requirements governing the development of a proposed subdivision are established in accordance with Section 66498.1 when a local agency approves or conditionally approves a vesting tentative map.' (Sec. 66498.9, subd. (b).) The Legislature declared that '[t]he private sector should be able to rely upon an approved vesting tentative map prior to expending resources and incurring liabilities without the risk of having the project frustrated by subsequent action by the approving local agency….' (Sec. 66498.9, subd. (b).)"

Doc. No. 1 at 155-56.

> "An approach that fails to protect the objectively reasonable expectations of the applicant would undermine the purpose of the vesting tentative map statute. (See Sec. 66498.9, subd. (b).)"

Doc. No. 1 at 160.

*Honchariw 2020* held that the County's demands for a municipal-sized fire suppression system were beyond Honchariw's objectively reasonable expectations of the Conditions of Approval and thus were beyond its authority in violation of Honchariw's vested rights. Noting that the Conditions of Approval required Honchariw to "cause all public improvements required by KFCSD to be completed and accepted for public use", the court found that "[t]his clause is unambiguously limited to public improvements required by KFCSD. As a result, the clause does not support the imposition of requirements by other entities". Doc. No. 1 at 165. The County was barred from superimposing its own demands. The court summarized:

> "In summary, an objective interpretation of the language in the conditions of approval leads to the conclusion that the County delegated to KFCSD the determinations about the fire suppression water service that would need to be in place prior to the approval of the final subdivision map. The fact County personnel regret this choice and now offer rational arguments for imposing requirements beyond those required by KFCSD prior to approving the final map is not a justification for altering the conditions of approval as drafted."

Doc. No. 1. at 168.   The County violated its ministerial duty to approve Honchariw's plans.

**II. The takings claim states a cause of action for a temporary regulatory taking.**

  **A. The County's refusal to approve Honchariw's improvement plans without its new demands for a fire suppression system in violation of its ministerial duty constituted a taking under a *Lucas* analysis.**

  If Honchariw were claiming a taking for disapproval of his subdivision application, as characterized by the County, he could not rely upon *Lucas v. South Carolina Coastal Comm'n*, 505 U.S. 1003 (1992)*,* for his property would  have meaningful value without approval. *Lucas* requires a taking of all, or substantially all, value. But that is not his claim here. As elaborated in **I**, supra, his relevant property right consisted of his approved vesting map for the property, VTM 2006-06, with a statutory vested right to finalize VTM 2006-06 in accordance with the conditions applicable upon approval, and he was completely

deprived of this right. If the County had directly rescinded the approval for VTM 2006-06, there would be no question that this would constitute a complete taking of a valuable protected property right even though the underlying property retained meaningful value. Its value could be measured as the difference in value between the property with the property right embodied in VTM 2006-06 and the property without VTM 2006-06. Here the County achieved the same result indirectly --- Honchariw's vested property rights were confiscated without authority. Since the County withdrew its demands pursuant to the writ of mandate secured by Honchariw, the confiscation was only temporary, so he did not suffer a complete loss of value, but he lost significant income during the period that he was unable to finalize the project and sell his new custom lots while having to bear carrying costs and the costs of the litigation..

**B. The County's refusal to approve Honchariw's plans without its new demands for a fire suppression system in violation of its ministerial duty constituted a taking under a *Penn Central* analysis.**

The heart of *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978) is a three factor analysis, re-affirmed in *Murr v. Wisconsin*,137 S.Ct. 1933, 1943 (2017):

> "[W]hen a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on a 'complex of factors', including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. [citations omitted]"

See *Bridge Aina Le'a, LLC v. Land Use Comm.*, 950 F.3d 610 (9th Cir. 2020).

*Investment-backed expectations.* The County first avers that Honchariw fails to allege reasonable investment-backed expectations, likening his expectations to a "a starry eyed hope", or "unilateral expectation", or "abstract need".  Memo at 6. Of course, with approval of VTM 2006-06, he had fully vested rights, but  Honchariw has added new allegations at FAC ¶¶2-4 to make clear that the trustor had reasonable investment-backed expectations for development such as VTM 2006-06 at acquisition of the property. Honchariw now alleges that at the time that the trustor acquired the property in 1973, Parcel One, the 13+ acre parcel within the Knights Ferry Historical Zone, was already used

commercially and zoned for development. FAC ¶2. The County's master rezoning of the Knights Ferry community in 1972 had reaffirmed its historical zoning. Under the master plan, historical zones were designated for development with density "normally … from one to seven units per net acre". FAC ¶2. That would allow 13 to 91 units over 13 acres. The Community Plan adopted by the County Board for Knights Ferry in 1976 reaffirmed that the zone was designated for development. FAC ¶2. VTM 2006-06 provided for only four new lots for single-family homes in Parcel One. FAC ¶4.

In March 2001 Honchariw met with County planning staff and confirmed that  the H-S zoning of Parcel One allowed residential development with no minimum zoning  and Parcel Two, zoned A-2-5, allowed residential development with 5-acre minimum zoning. FAC ¶12.  He met with the local municipal advisory council in October 2004; presented a preliminary subdivision map to the County planning director, receiving preliminary approval, in November 2004; commissioned biological and archaeological reports at his request in 2005; and submitted his application for VTM 2006-06 to the County in June 2006.  See *Honchariw 2011*.

Planning staff also confirmed that VTM 2006-06 complied with all general plan and zoning requirements, FAC ¶¶8,12, which entitled it to the protection of the Anti-NIMBY Law. FAC ¶8. The Anti-NIMBY Law was held by the court of appeal in *Honchariw 2011* to provide a statutory entitlement to residential development. With approval of VTM 2006-06 in 2012, Honchariw had not just an uncertain investment-backed expectation but a fully-vested legal entitlement to finalize his residential development in substantial compliance with the local ordinances, policies, and standards applicable to VTM 2006-06 at the time of his submission of a complete application to the County in 2006, subject to the Conditions of Approval for VTM 2006-06.

*Economic impact*. The County next avers that Honchariw has failed to show any economic impact of the County's demands, arguing that Honchariw has inadequately focused on 4 lots totaling 4 acres and failed to show any decline in value of the "parcel as a whole". Memo at 7. But this is misdirected. Honchariw is not at this point claiming compensation for the loss of value of the four 1-acre lots or the overall property. He is claiming compensation for the complete loss of an income-producing asset --- his vested right to his residential subdivision -- for an extended period while bearing mounting carrying

costs.  The entire project came to a halt because the costs of the fire-suppression system demanded by the County for the water line extension serving the four lots rendered the entire project uneconomic. Honchariw could not finalize his subdivision and sell his lots. Subdivision was key to unlocking the value of the property. The bulk of the property was raw land, earning no rental, licensing or other income.  The temporary taking stopped the project in its tracks for almost 4 years and may have stopped it forever.

    *Character of County action.* The County offers no analysis under the third factor to undermine the court's prior recognition that Honchariw's claim passed muster. It does. *Lingle v. Chevron U.S.A.,* 544 U.S. 528 (2005), noted that "whether a governmental action amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'" may be relevant in discerning whether a taking has occurred. *Id.* at 539. By stopping the project in its tracks, the County was scarcely adjusting benefits to promote the common good. Honchariw was deprived of his entitlement to finalize his subdivision and sell lots for housing development as intended under the Anti-NIMBY Law. The bulk of the property would remain open space, as though taken outright, so new housing intended under the Anti-NIMBY Law would not be built. And the demands entailed a physical take-over and seizure of some of Honchariw's property. He   would be required to construct a fire suppression system with municipal-sized primary and back-up pumps 10 times more powerful than KFCSD's own pumps, with a back-up generating plant, and major water storage tanks, all on his property, at his expense, and then dedicate the property to the KFCSD. This was fairly a burden of all KFCSD users, not just Honchariw. It is broadly recognized that judicial review of governmental conditions should be less deferential where an owner is required to convey property, a classic indicia of a taking. See, e.g., *Landgate, Inc. v. California Coastal Commission,* 17 Cal.4th 1006 (1998).

## II. Honchariw's allegations that the County's demands were arbitrary and capricious and / or willful and deliberate obstruction state a cause of action for deprivation of substantive due process.

    The County argues that the due process claim fails because the First Amended Complaint does not add any facts to meet the "exceedingly high burden" to show that the

County behaved in a constitutionally arbitrary fashion in a "routine, even if perhaps unwise or legally erroneous, executive decision" to "deny a development application". Memo at 9-10. But the County badly mischaracterizes its fire suppression demands --- they were not a "routine … executive decision" denying a "development application", and Honchariw does add new factual allegations.

This is not a run-of-the-mill challenge to discretionary review of a "development application". The development had already been approved in 2012 after successful legal action by Honchariw to overturn the County's original 2009 disapproval on the basis of violation of the Anti-NIMBY Law. And the County did not issue its demands as a "routine, executive decision". It had no right to make a decision. The County ignores the defining feature of this case that Honchariw enjoyed a constitutionally protected entitlement to finalize his residential subdivision without 11th hour demands by the County. The County had a ministerial duty to approve his improvement plans as long as they were in "substantial compliance" with the terms of his Conditions of Approval.

In *Gerhart v. Lake County,* 637 F.3d 1013, 1019-1020 (9th Cir. 2010), the court acknowledged:

> "… we have held that state law creates a 'legitimate claim of entitlement' when it imposes significant limitations on the discretion of the decision maker. [citation omitted] For example, we have held that such an entitlement to a government permit exists when a law or state regulation requires that the permit be issued once certain requirements are satisfied. See, e.g., *Groten* 251 F.3d at 850 (holding that a protected property right to a license existed where both federal and state law entitled the applicant to a license whenever certain statutory requirements were met); *Bateson v. Geisse* 857 F.2d 1300, 1303 (9th Cir. 1988) (holding that a builder had a property interest in a building permit where city regulations provided that once an applicant met certain requirements, a permit must be issued)."

*See Parks v. Watson*, 716 F.2d 646, 657 (9th Cir. 1983) (mandatory conditions found); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (if procedural requirements are intended as significant substantive restriction on an agency's actions, a federal protected property interest may be created); *Foss v. National Marine Fisheries Service*, 161 F.3d 584, 588 (9th Cir. 1998).

His entitlement was protected against arbitrary and capricious demands and / or willful or deliberate obstruction.   *Bateson v. Geisse,* 857 F.2d 1300 (9th Cir. 1988), is

directly on point. A developer who had met all requirements claimed a substantive due process violation when he was denied a building permit by the city council.  The city's regulations specified that "once an applicant's building plans comply with the code and other applicable laws and the fees are paid, the building official must issue a building permit." *Id.* at 1303. The court affirmed the district's court's decision "that the appellant's refusal to issue [applicant's] building permit, after [applicant] had satisfied all of the requirements made on the permit, was an arbitrary and capricious action which deprived [applicant] of his substantive due process rights." *Id.* at 1303. Indeed, the duty was so clear that council members who disapproved the permit were denied qualified immunity. The court ruled that:

> "the city council members' actions were not objectively reasonable and preclude their use of qualified immunity against this suit. By 1984 when the council members decided to withhold [applicant's] permit, this court had made clear that a statutory scheme which placed 'significant substantive restrictions' on the decision to grant a permit or license would be sufficient to confer due process rights. [citations omitted] Of course, the general contours of substantive due process that prohibit arbitrary and capricious action had been defined long before. [citations omitted]"

Id. at 1303. While the contours of substantive due process were narrowed in *Armendariz v. Penman*, 75 F.3d 1311 (en banc) (9th Cir. 1996), where the court deemed a substantive due process claim based upon arbitrary conduct to have no place in a context already addressed by explicit textual provisions of constitutional protection such as the takings clause,  the Supreme Court in *Lingle* overturned that analysis, concluding that the test whether a regulation "substantially advances legitimate state interests" was not appropriate in the takings context, 540 U.S. at 532, but rather prescribes an inquiry in the nature of due process. 540 U.S. at 540. The court acknowledged that:

> "[a] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause. See, e.g., *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)(stating that the Due Process Clause is intended, in part, to protect the individual against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective')."

540 U.S. at 542.

Accordingly substantive due process claims based upon arbitrary acts were resurrected in the Ninth Circuit in the land-use context. In *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007), the Ninth Circuit addressed the question whether a developer may state a claim for relief under substantive due process based on allegedly arbitrary and irrational denial of a permit application in light of *Lingle. Id.* at 852. The court acknowledged that *Lingle* "pulls the rug out from under our rationale for totally precluding substantive due process claims based on arbitrary or unreasonable conduct", at 855, and in *Action Apartment Ass'n v. Santa Monica Rent Control Bd.,* 509 F.3rd 1020 (9th Cir. 2007)*,* while the court dismissed a claim for deprivation of substantive due process as unripe, at 1022, it cited and reaffirmed *Crown Point* for the proposition that "substantive due process can be an appropriate vehicle to challenge the rationality of land use regulations". The court concluded that plaintiff's contentions that rent control provisions were "arbitrary, unreasonable, and unrelated to the general welfare" stated cognizable substantive due process claims. *Id.* at 1024.

The "exceedingly high burden" or "egregious" conduct standard urged by the County is a gloss added in cases of discretionary authority, such as run-of-the-mill land use cases involving discretionary review and permits. This was the case in *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008), the central case cited by the County. A neighborhood association claimed that the city's alleged failure to enforce provisions of its zoning code in issuing a building permit violated its substantive due process rights. The court held that the complaint did not state a due process claim. *Id.* at 1089. The court recognized that '[t]o state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty, or property interest." *Id.* at 1087. No such interest was found: "[Plaintiff's] 'failure-to-protect' and 'failure-to-enforce' allegations do not suffice." *Id.* at 1087. Nonetheless, the court went on to opine that if a protected interest could be found, "[o]nly egregious official conduct can be said to be arbitrary in the constitutional sense", at 1088.  But this was based on a critical premise --- the full clause reads "*When executive action like a discrete permitting decision is at issue*, only 'egregious official conduct can be said to be arbitrary in the constitutional sense'." *Id.* at 1088. The County had no right to take  "executive" action here.

Furthermore, even in the context of discretionary executive action, the court's concept of "egregious" action does not require malice, or bad faith, or similar tainted or willful conduct ---- only action "amount[ing] to 'an abuse of power' lacking any "reasonable justification in the service of a legitimate governmental objective". 540 F.3d at 1088. Honchariw is in fact alleging an "abuse of power" lacking "any reasonable justification in the service of a legitimate governmental objective". The County acted in flagrant disregard and violation of state law designed to prevent exactly what it did. This was "egregious" behavior as conceived in *Shanks*.

At the time of approval in 2012, since no ordinance, standard, or policy applicable to VTM 2006-06 required a municipal-sized fire suppression system, the County had no right to impose it in the Conditions of Approval. As noted in *Honchariw 2020*:

> "[W]hen a local agency considers an application for a tentative map, it shall apply only those ordinances, policies, and standards in effect when the vesting tentative map application is deemed complete …."

Doc. No. 1 at 156. And it had no right to demand any such system in 2016 under any objective interpretation of the Conditions of Approval. *Honchariw 2020* expressly recognized that the County had unambiguously delegated sole and complete authority for water line improvements, including fire suppression improvements, to the KFCSD under its Conditions of Approval:

> "The language of the second clause of condition No. 24 requires Honchariw to 'cause all public improvements required by KFCSD to be completed and accepted for public use.' This clause is unambiguously limited to public improvements required *by KFCSD*. As a result, the clause does not support the imposition of requirements by other entities." [Ital. in orig.]

Doc. No. 1 at 165. The County's demands were arbitrary and capricious and / or in wilful or deliberate obstruction of Honchariw's vested rights.[1]

---

[1] The County has argued that the superior court's denial of Honchariw's petition for writ of mandate itself evidences that there was a real unsettled issue here, so the County's actions were not arbitrary or capricious, but this claim is disingenuous. As noted in *Honchariw 2020*, the superior court's statement of decision created:

> "the impression the trial court determined County personnel were exercising discretionary authority when interpreting the conditions of approval. Any such determination would have been legal error. *Id.* at 17-18 fn 8. Discretion was exercisable when imposing conditions of approval, 'not when interpreting the

The FCA adds specific new factual allegations to underscore how the County's actions were arbitrary and capricious and / or in purposeful disregard of Honchariw's vested rights. Design of the water line extension was a core issue at approval of VTM 2006-06. FCA ¶38. Not only was the language clear on its face, FCA ¶41 alleges that the County had expressly specified that fire suppression measures, notably fire water flows, would be determined at the time of future construction upon the property. The facts were apparent on the face of the record. As alleged in FCA ¶43, and as noted by the court in *Honchariw 2020*, the Action Agenda Summary prepared by the planning staff, and signed by the planning director, expressly provided:

> "[t]he project … will be obtaining water for domestic use and fire suppression from the KFCSD. Any fire flow requirements will be handled through the building permit process and at the time of construction, as required by the California Fire Code."

Doc. No. 1 at 147. As alleged in FCA ¶43, the planning director confirmed this in her formal presentation of the application and the planning department's proposed conditions of approval to the County Board of Supervisors at the hearing on the application. The relevant sections of the proposed conditions of approval were adopted by the Board as presented. In demanding a municipal-sized fire suppression system, the County was literally reneging on its own official description of the operation of the Conditions of Approval. FCA ¶45 adds that, as noted in *Honchariw 2020*, Honchariw declared that this understanding had been expressly confirmed to him upon approval by conference call with the lead staffer, assistant county counsel, and a representative of the Department of Public Works. Doc. No. 1 at 148-49.

The County's past argument that its demands were not arbitrary and capricious and /or willful or deliberate obstruction because it acted in pursuit of the legitimate government

---

conditions to determine whether to approve a final map.' (See Cal. Code Regs., tit. 14, sec. 15268, subd. (b)(3) [approval of final map presumed to be ministerial, not discretionary].)"

Doc. No. 1 at 161.

purpose of public safety is tone deaf. The County is asking this court to sanction exactly the behavior proscribed by the vesting provisions of the Subdivision Map Act. In light of the express purpose of the vesting provisions --- to protect development, especially housing, against 11th hour demands, any claim that the County was serving the otherwise legitimate governmental purpose of public safety offers no protection.

A comparable situation of arbitrary and capricious demands and / or willful and deliberate obstruction of an owner's rights was presented in *Ali v. City of Los Angeles*, 77 Cal.App.4th 246 (1999). After a hotel was substantially destroyed by fire, the owner applied for a demolition permit. The city withheld the permit for 18 months because it believed that the property was a "single-room occupancy" hotel subject to significant restrictions on demolition despite an on-point court of appeal opinion holding that local laws restricting demolition were pre-empted by California's Ellis Act, which provided that no public entity may compel the owner of any residential property to offer accommodations for rent. The trial court found the city liable for damages in inverse condemnation and the court of appeal agreed that the "City's wrongful denial of a demolition permit … in violation of the Ellis Act effected a temporary regulatory taking…."[2] *Id.* at 249-250. The court admonished that "a government agency may not evade the takings clause by fabricating a dispute … or by otherwise arbitrarily imposing conditions on development in order to delay or discourage that development."  *Id.* at 254. The court specifically rejected the contention that the city's:

> "erroneous enforcement of the ["single-resident occupancy"] ordinance had the legitimate governmental objective of preserving the availability of low income housing. This apparent purpose does not save the City from its temporary taking of [plaintiff's] property, because it was arbitrary and unreasonable in light of the Ellis Act."

*Id.* at 255. The court continued:

> "The City may not simply delay development by fabricating an irrelevant dispute about whether the [hotel] was an (single-resident occupancy) hotel."

---

[2] As elaborated supra, in light of *Armendariz*, a substantive due process claim could not then be advanced if a takings claim was possible, so *Ali* treated the claim as a taking claim.

*Id.* at 256. For the County to demand municipal-sized fire suppression requirements here was arbitrary and unreasonable in light of the vesting provisions of the Subdivision Map Act. As the court noted in *Honchariw 2020*:

> "The fact County personnel regret this choice and now offer rational arguments for imposing requirements beyond those required by KFCSD prior to approving the final map is not a justification for altering the conditions of approval as drafted."

Doc. No. 1 at 168.

The County's actions were the most recent chapter in a history of obstruction well documented in previous litigation in regard to the project. FAC ¶¶21-36.  The history dated back to the County's unlawful disapproval of Honchariw's original application in 2009 in violation of the Anti-NIMBY Law. There, as here, the County manufactured a dispute. In *Honchariw 2011,* the court of appeal for the Fifth District held in a unanimous opinion that the disapproval was an unlawful abuse of discretion. The court of appeal found the language of the statute "clear and unambiguous", at 1073, with "nothing in the legislative history to support" the County's contention that the section was limited to "affordable housing" or "density reductions". *Id.* at 1074.  It noted that "[c]ase law addressing that contention has rejected it, as we do." *Id.* at 1075.  Pointedly the court found that the County's critical representation to the trial court that Honchariw failed to comply with local water connection requirements was wholly unsupported --- the court saw "nothing in this record which would support a conclusion that" Honchariw's project did not comply with the requirement of County Code section 20.52.210 that "lots of a subdivision shall be connected to a public water system …", recognizing that "[l]ots of a subdivision cannot be connected to a public water system until those 'lots of a subdivision' exist." *Id.* at 1080. No lots existed until lots were approved and additional steps completed. The court recognized that "[Honchariw] has consistently asserted that if the project were approved … [he] would connect the lots as required by the County ordinance". *Id.* at 1080-81. FAC ¶32.  Two years of appellate litigation, at great expense of time and money, were the result of a manufactured controversy and flagrant misrepresentation by the County.[3]

---

[3] On the heels of *Honchariw 2011*, Honchariw did pursue takings and / or substantive due process claims in state and then federal court, but the claims were ultimately dismissed as

**CONCLUSION**

The court should deny the County's Motion to Dismiss First Amended Complaint. If the Motion is granted, Honchariw requests leave to amend the First Amended Complaint.

January 20, 2023

Respectfully submitted,

*Nicholas Honchariw*

Nicholas Honchariw, Counsel for Plaintiff

untimely and thus unripe because not filed within 90 days of the initial 2009 disapproval by the County.