# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS HONCHARIW, Trustee, Honchariw Family Trust,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF STANISLAUS,<br><br>Defendant. | Case No. 1:21-cv-00801-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc. 35) |

## I.  INTRODUCTION

Before the Court is Defendant County of Stanislaus' Motion to Dismiss Plaintiff Nicholas Honchariw's First Amended Complaint[1] (the "Motion"). (Doc. 35.) On January 22, 2023, Plaintiff filed his opposition (Doc. 38), and Defendant filed its reply on February 3, 2023 (Doc. 39).[2] The hearing set for March 8, 2023, on the Motion was vacated by the undersigned and the matter was taken under submission.[3] (Doc. 40.) Having considered the briefing, and for the reasons set forth below, Defendant's Motion will be GRANTED with leave to amend the remaining two causes of action.

///

---

[1] The operative pleading, Plaintiff's First Amended Complaint ("FAC"), was filed on November 28, 2022. (Doc. 32.)
[2] In its reply brief, Defendant notes that Plaintiff's opposition was filed two days late and urges the Court to disregard the untimely filing. (*See* Doc. 39 at 3.) In the absence of any apparent prejudice, which Defendant has not shown, the Court shall permit the late filing. Plaintiff is cautioned that any future failures to comply with this Court's deadlines will be looked upon with disfavor.
[3] The parties previously consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 28.)

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In considering Defendant's Motion, the Court accepts as true all of the following factual allegations contained in the FAC. *See, e.g., Rotkiske v. Klemm*, 140 S. Ct. 355, 359 n.1 (2019) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

Plaintiff, in his capacity as trustee for the Honchariw Family Trust, sought to divide land in the Knights Ferry area of Stanislaus County into a development of several residential lots and one undeveloped parcel (FAC ¶¶ 1–3). *See also Honchariw v. Cty. of Stanislaus,* 51 Cal. App. 5th 243, 246–47 (2020).[4] The Board of Supervisors of the County of Stanislaus approved the vesting tentative map application for Plaintiff's development subject to several conditions of approval. *Id.* at 249. One of these conditions of approval was a site improvement request for an extension of fire hydrants to provide a higher level of fire protection for the development. *Id.* at 250.

The current dispute between the parties stems from Plaintiff's submission of a proposed final subdivision map in April 2016, along with plans and specifications in accordance with Defendant's previously requested conditions of approval (FAC ¶¶ 49–50). *See also Honchariw,* 51 Cal. App. 5th at 250. In November 2016, Stanislaus County's Department of Public Works ("DPW") sent Plaintiff's engineers a letter stating it could not approve the proposed plans for the water system without further information about several items, including fire hydrants (FAC ¶ 51). *Honchariw,* 51 Cal. App. 5th at 250–51. At a meeting in March 2017 with DPW, Plaintiff was informed that his proposed plans did not comply with the conditions of approval. *Id.* at 251. DPW interpreted the conditions of approval as requiring a fire suppression system based on functional fire hydrants, which were hydrants that could meet fire flows for volume and pressure required by the California Fire Code (FAC ¶ 51). *Honchariw,* 51 Cal. App. 5th at 251–53. In

---

[4] The Court previously took judicial notice of the facts and proceedings in *Honchariw v. Cty. of Stanislaus*, 51 Cal. App. 5th 243 (2020), given its direct relationship with the present case (Doc. 29 at 2 n.3). *See* Fed. R. Evid. 201(c)(1) (the court may take judicial notice on its own); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). Furthermore, Defendant requests that the Court take judicial notice of Plaintiff's vesting tentative map, which was made part of Defendant's records as to Plaintiff's subdivision application. (Doc. 36.) Defendant's request is granted pursuant to Rule 201 of the Federal Rules of Evidence. The Court hereby takes judicial notice of the vesting tentative map because "neither party disputes [its] authenticity . . . or the accuracy of the information displayed therein," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010), and courts may take judicial notice of "'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

June and July of 2017, Plaintiff and DPW exchanged correspondence in an effort to resolve their dispute. *Id*. at 251–52.

Having reached an impasse, in August 2017, Plaintiff filed a Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages in state court raising three state law claims (FAC ¶ 58; *see* Doc. 1 at 8–16). *Honchariw*, 51 Cal. App. 5th at 253. In May 2018, the trial court issued a judgment denying the petition, and Plaintiff appealed. *Id*. In June 2020, the California Court of Appeal reversed, concluding that Defendant had misinterpreted the conditions of approval and remanded the matter to the trial court to determine the terms of the writ of mandate, which, at a minimum, would require Defendant and its officials to interpret the conditions of approval in accordance with its opinion (FAC ¶ 58). *Honchariw*, 51 Cal. App. 5th at 246, 256.

In April 2021, Plaintiff filed a Verified Supplemental and Amended Complaint[5] in state court asserting three state and federal claims arising from Defendant's rejection of his April 2016 proposed final subdivision map for his failure to comply with the conditions of approval. Plaintiff alleged (1) a violation of California Government Code § 815.6 (Supp. Compl. ¶¶ 10–14); (2) inverse condemnation and temporary taking under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 19 of the California Constitution; and 42 U.S.C. § 1983 (Supp. Compl. ¶¶ 15–21); and (3) denial of his substantive due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article 1, Section 7 of the California Constitution; and 42 U.S.C. § 1983 (Supp. Compl. ¶¶ 22–25).

In May 2021, Defendant removed the action to this federal court. (Doc. 1.) On December 3, 2021, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff's claims were procedurally and/or substantively defective. (Doc. 15.) On November 7, 2022, this Court granted Defendant's motion in part, dismissing without leave to amend Plaintiff's claim under California Government Code § 815.6, and dismissing with leave to amend Plaintiff's takings and substantive due process claims. (Doc. 29.)

---

[5] The original pleading, Plaintiff's Verified Supplemental and Amended Complaint ("Supp. Compl."), is attached to Defendant's Notice of Removal (Doc. 1) as Exhibit 36. (*See* Doc. 1 at 237–45.)

Plaintiff timely filed his FAC, proceeding with the remaining two claims. (Doc. 32.) On December 22, 2022, Defendant filed the instant Motion pursuant to Rule 12(b)(6), asserting that Plaintiff's complaint, as amended, fails to state plausible claims for relief. (Doc. 35.)

### III. LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "'tests the legal sufficiency of a claim,'" and dismissal is "proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). "To survive a motion to dismiss, the plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At this stage, the Court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. "'[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Twombly*, 550 U.S. at 562.

In resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008) (internal quotation marks omitted). "'[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

To the extent the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).

Federal Rule of Civil Procedure 15(a)(2) advises that "[t]he court should freely give leave when justice so requires." "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). However, "that liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016).

### IV. DISCUSSION

#### A. Plaintiff Fails to State a Cognizable Takings Claim

"The Takings Clause of the Fifth Amendment states that private property [shall not] be taken for public use, without just compensation." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (internal quotation marks omitted). "A classic taking occurs when the 'government directly appropriates private property or ousts the owner from his domain.'" *Id*. (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). The Supreme Court has recognized that if a regulation goes too far, it will qualify as a taking. *Bridge Aina Le'a, LLC*, 950 F.3d at 625 (citing *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)); *accord Murr v. Wisconsin*, 137 S. Ct. 1933, 1937 (2017). "This area of the law is characterized by 'ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances.'" *Id*. (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002) ("*Tahoe-Sierra*")).

The Supreme Court has identified two guidelines that are relevant for determining when a government regulation constitutes a taking. *Murr*, 137 S. Ct. at 1937. "First, 'with certain qualifications . . . a regulation which "denies all economically beneficial or productive use of land" will require compensation under the Takings Clause.'" *Id*. (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992)). "Yet even the complete deprivation of use under *Lucas* will not require compensation if the challenged limitations 'inhere . . . in the restrictions that background principles of the State's law of property and nuisance already placed upon land ownership.'" *Murr*, 137 S. Ct. at 1937 (citing *Lucas*, 505 U.S. at 1029).

Second, inverse condemnation claims predicated on alleged temporary regulatory takings are governed by the Supreme Court's holding in *Penn Central Transportation Co. v. City of N.Y.*,

438 U.S. 104 (1978) ("*Penn Central*").  Under *Penn Central*, the Court evaluates the following three factors of "particular significance": (1) "[t]he economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." *Id*. at 124.  "'Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,' . . . and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values." *Id*. (quoting *Pa. Coal Co.*, 260 U.S. at 413).

"The first and second *Penn Central* factors are the primary factors." *Bridge Aina Le'a, LLC*, 950 F.3d at 630 (citing *Lingle*, 544 U.S. at 538–39).  *Penn Central*, however, sets forth no "set formula" to determine whether a regulatory action is "'functionally equivalent to the classic taking.'"  *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010).  Instead, the outcome of the inquiry "'depends largely upon the particular circumstances [in the] case' at hand." *Bridge Aina Le'a, LLC*, 950 F.3d at 630.

As a preliminary matter, Plaintiff contends that Defendant's refusal to approve his improvement plans constituted a taking under *Lucas*.  (Doc. 38 at 8–9.)  But, in the FAC and his opposition to Defendant's Motion, Plaintiff acknowledges that the alleged taking was temporary and he was not deprived of all economically viable use of his property.  (*See* FAC at 1, 21–23; Doc. 38 at 9 ("the confiscation was only temporary, so [Plaintiff] did not suffer a complete loss of value.").)  "Anything less than a 'complete elimination of value,' or a 'total loss,' . . . would require the kind of analysis applied in *Penn Central*." *Tahoe-Sierra*, 535 U.S. at 330 (citing *Lucas*, 505 U.S. at 1019–20 n.8).  Accordingly, the Court finds that Plaintiff fails to state a plausible claim of an impermissible taking under *Lucas*.  With the above principles in mind, the Court next evaluates whether the FAC states a plausible regulatory takings claim under *Penn Central*.

    **1.   First Two *Penn Central* Factors: Economic Impact and Interference with Investment-Backed Expectations**

As set forth above, the first two factors to be evaluated under *Penn Central* are the

economic impact of the regulation on the claimant, and the extent to which the regulation has interfered with distinct investment-backed expectations.

In analyzing the first factor, the Court "compare[s] the value that has been taken from the property with the value that remains in the property." *Bridge Aina Le'a, LLC*, 950 F.3d at 630–31 (internal quotation marks omitted). There is "'no litmus test'" in undertaking this "value comparison," which, as previously mentioned, "aims 'to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain.'" *Id*. at 631 (quoting *Lingle*, 544 U.S. at 539). The Ninth Circuit has observed that "diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018) (citing *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127–28 (9th Cir. 2013)).

With regard to the second factor, the Court uses an objective analysis to evaluate interference with the reasonable investment-backed expectations of the property owner. *Bridge Aina Le'a, LLC*, 950 F.3d at 633. The "focus is on interference with reasonable expectations." *Id*. "'Distinct investment-backed expectations' implies reasonable probability, like expecting rent to be paid, not starry eyed hope of winning the jackpot if the law changes." *Guggenheim*, 638 F.3d at 1120. "Thus, 'unilateral expectation[s]' or 'abstract need[s]' cannot form the basis of a claim that the government has interfered with property rights." *Bridge Aina Le'a, LLC*, 950 F.3d at 633–34. Furthermore, "what is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Id*. at 634 (internal quotation marks omitted). For example, "'[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end[.]'" *Id*. (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993)).

Here, the FAC alleges that in a meeting in March 2017, DPW demanded that Plaintiff design and construct a full fire suppression system with flows based on functional fire hydrants, and that if the Knights Ferry Community Services District ("KFCSD") could not supply municipal

flows, then Plaintiff, as the developer, would have to supply them himself.  (FAC ¶ 52.)  Plaintiff alleges that such requirements were not previously mentioned in the conditions of approval.  (FAC ¶ 53.)  The FAC elaborates as follows:

> 55. Plaintiff sought to meet with [Defendant] to arrange a mutually agreeable way forward, but [Defendant] refused without presentation of a fire suppression system.
>
> 55. This brought the project to a halt.  Costs were unsustainable.  Upon detailed investigation, [P]laintiff determined that the costs of a municipal-sized fire suppression system as required by [Defendant] could itself exceed $500,000 over and above the $300,000 anticipated for the water line extension and road widening required by his Conditions of Approval.  Since [P]laintiff did not expect the 1-acre lots to sell for more than $250,000 each, this rendered development of the four 1-acre parcels to be served by the water line extension uneconomic unless the costs were recovered from [Defendant].
>
> 56. The Trust could not fund, or finance, or bond completion of the improvements being required by [Defendant].
>
> 57. Plaintiff was deprived of meaningful economic use of, and income from, the property in frustration of his distinct investment-backed expectations for the property.

(FAC ¶¶ 55–57.)[6]

Plaintiff alleges Defendant abandoned its demand for a full fire suppression system in early 2021, but by then, Plaintiff had already incurred "significant costs."  (FAC ¶ 60.)  The FAC further alleges that in 2014, Defendant "spot down-zoned" Plaintiff's property and, "through a rarely used procedure," required "5-acre minimum zoning upon the substantial remainder in the Historical District owned by [P]laintiff."  (FAC ¶ 62.)  Plaintiff alleges "[t]he remainder was being stranded and [P]laintiff was blocked from amortizing site improvement costs with fill-in development."  (*Id*.)  Lastly, the FAC alleges as follows:

> 64. [Defendant's] refusal to approve [Plaintiff's] April 14, 2016 plans without the incorporation of a municipal-sized fire suppression system together with his own water supply for fire suppression deprived him of his investment-backed expectations for development of the property for 4 years.  The property containing the four 1-acre parcels was expressly zoned for development under

---

[6] The FAC appears to contain two paragraphs labelled paragraph 55.  (*See* FAC at 19.)  The Court refers to these paragraphs as presented in the FAC.

8

> its H-S zoning when acquired by the settlor of the Trust, and [P]laintiff had expended substantial time, money, and effort since 2002 to subdivide the property.

(FAC ¶ 64.)

As with Plaintiff's original complaint, these abstract, conclusory allegations, without more, fall short of setting forth the "value comparison" necessary to indicate any economic impact of Defendant's conduct on Plaintiff's property or demonstrating interference with any reasonable investment-backed expectations that Plaintiff could have formed regarding his property. First, Plaintiff sets forth minimal allegations regarding the economic effect as to a portion of his property due to Defendant's regulatory actions. The FAC alleges that Plaintiff's real property consists of "over 33 acres." (FAC ¶ 1.) Plaintiff pleads that the costs of the fire suppression system required by Defendant would exceed $500,000 in addition to the $300,000 he expected to incur, and that he did not anticipate that four 1-acre parcels would sell for more than $250,000. (FAC ¶ 55.) Plaintiff alleges that "[t]he Trust could not fund, or finance, or bond completion of the improvements being required by [Defendant]," and he concludes he "was deprived of meaningful economic use of, and income from, the property in frustration of his distinct investment-backed expectations for the property." (FAC ¶¶ 56–57.)

These barebones allegations, again, fail to sufficiently plead the first *Penn Central* factor. As with the original complaint, Plaintiff's sheer allegations that Defendant's actions caused him individualized harm in terms of expenses and delay in developing his property are insufficient. *Penn Central*, 438 U.S. at 124–25. As currently pled, the FAC lacks complete information about the value of the entire property when the 2016 application was submitted, or its value after Defendant denied the application. *See Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022); *see, e.g., S. Cal. Rental Hous. Ass'n v. Cty. of San Diego*, 550 F. Supp. 3d 853, 866 (S.D. Cal. 2021) ("It is difficult to calculate the impact that the Ordinance has on the value of Plaintiff's members' property interests, particularly because Plaintiff has not included any facts related to a diminution of the value of their property."). Therefore, even accepting Plaintiff's allegations in the FAC as true, it is not possible for the Court to evaluate the economic impact to Plaintiff's property as a whole. *See Evans Creek, LLC*, 2022

WL 14955145, at *1. *Penn Central* made clear "that even though multiple factors are relevant in the analysis of regulatory takings claims, in such cases [the Court] must focus on 'the parcel as a whole.'" *Tahoe-Sierra*, 535 U.S. at 326–27.

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather on both the character of the action and on the nature and extent of the inference with rights in the parcel *as a whole*.

*Penn Central*, 438 U.S. at 130–31 (emphasis added); *accord Tahoe-Sierra*, 535 U.S. at 327; *see, e.g.*, *Murr*, 137 S. Ct. at 1944 ("the Court has declined to limit the parcel in an artificial manner to the portion of property targeted by the challenged regulation.").

Here, at best, Plaintiff has presented specific allegations that reflect economic loss with respect to four of the over 33 acres he owns, and *no effect* as to the diminution of value of the rest of his property. *See, e.g., Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1189 (9th Cir. 2012). "Although there is no precise minimum threshold," Plaintiff's allegations are "of very little persuasive value in the context of a federal takings challenge," because the Supreme Court has "'uniformly reject[ed] the proposition that diminution in property value, standing alone, can establish a "taking."'" *Id.*; *see also Concrete Pipe & Prods. of Cal., Inc.*, 508 U.S. at 645 ("our cases have long established that mere diminution in the value of property, however serious, is insufficient to demonstrate a taking."); *GHP Mgmt. Corp. v. City of Los Angeles*, Case No. CV 21-06311 DDP (JEMx), 2022 WL 17069822, at *4 (C.D. Cal. Nov. 17, 2022) ("the threshold is high"). To the contrary, the Court "has upheld land-use regulations that destroyed or adversely affected recognized real property interests," and where "the challenged governmental actions prohibited a beneficial use to which individual parcels had been previously devoted and thus caused substantial individualized harm." *Penn Central*, 438 U.S. at 125. Thus, the decrease in value alleged by Plaintiff for merely a small quantity of affected parcels falls within the range of permissible land-use regulations and comes short of pleading the first *Penn Central* factor.

In his opposition, Plaintiff clarifies that his takings claim is not predicated on compensation for the loss of value of the four 1-acre lots or the overall property. (Doc. 38 at 10–

11.) Instead, his takings claim seeks compensation for the loss of an income-producing asset during the time in which Defendant denied his vesting tentative map application, caused the project to be temporarily halted, and ultimately prevented Plaintiff from finalizing his subdivision and selling his lots. (*Id*.) "But the mere loss of some income because of regulation does not itself establish a taking. Rather, economic impact is determined by comparing the total value of the affected property before and after the government action." *Colony Cove Props., LLC*, 888 F.3d at 451.

The Supreme Court's requirement that "'the aggregate must be viewed in its entirety'" clarifies why, for example, restrictions on the use of only limited portions of the parcel, such as setback ordinances, or a mandate that coal pillars be left in place to prevent mine subsidence, were not considered regulatory takings. *Tahoe-Sierra*, 535 U.S. at 327. In each of these cases, the Supreme Court "affirmed that 'where an owner possesses a full "bundle" of property rights, the destruction of one "strand" of the bundle is not a taking.'" *Id*. Thus, in *Tahoe-Sierra*, the Court refused to "effectively sever" the 32 months during which the petitioners' property was restricted by temporary moratoria on development and then ask whether that segment had been taken in its entirety, because such an approach would overstate the effect of regulation on property, turning "every delay" into a "total ban." *Id*. at 331.

Here, the FAC does not allege diminution in value as to the totality of the property, nor does it specify pre- or post-regulation value from which a level of diminution as to the parcel as a whole could be calculated. Accordingly, even if one "strand" of Plaintiff's property rights were affected because Defendant's actions caused him individualized harm in terms of expenses and delay in developing his property and receiving income, the FAC still fails to plead facts sufficient to show economic harm. *See Tahoe-Sierra*, 535 U.S. at 331; *Murr*, 137 S. Ct. at 1944.

Similarly, Plaintiff fails to state a cognizable claim of interference with his investment-backed expectations. The FAC describes expectations dating back to the original trustor's acquisition of the property in 1973 (*see* FAC ¶¶ 2–3) and in his opposition, Plaintiff contends that Defendant's denial of his vesting tentative map application resulted in the bulk of the property being "raw land, earning no rental, licensing or other income" (Doc. 38 at 11). Plaintiff, however,

does not establish a "taking" "simply by showing that [he has] been denied the ability to exploit a property interest that [he] heretofore had believed was available for development." *Penn Central*, 438 U.S. at 130.  This Court's focus is on Plaintiff's *objectively reasonable* expectations as to the development of his real property, an endeavor which exists in a field rationally subject to regulation by Defendant. *Bridge Aina Le'a, LLC*, 950 F.3d at 633–34; *Colony Cove Props., LLC*, 888 F.3d at 452.  In this context, "[t]o 'expect' can mean to anticipate or look forward to, but it can also mean 'to consider probable or certain,' and 'distinct' means capable of being easily perceived, or characterized by individualizing qualities."  *Guggenheim*, 638 F.3d at 1120. "Speculative possibilities of windfalls do not amount to 'distinct investment-backed expectations,' unless they are shown to be probable enough to materially affect the price." *Id*. at 1120–21.

Plaintiff's "'[u]nilateral expectations' about the mere possibility for future development," as pleaded (*see, e.g*., FAC ¶¶ 57, 62, 64), "were no more than speculative desires that cannot form the basis of a takings claim."  *Evans Creek, LLC*, 2022 WL 14955145, at *1 (citing *Bridge Aina Le'a, LLC*, 950 F.3d at 633–34); *see, e.g., Laurel Park Cmty., LLC*, 698 F.3d at 1190 ("although the ordinances affected one of Plaintiffs' expectations—that at some indefinite time in the future they could convert their properties to some other specific uses—the ordinances did not affect Plaintiffs' 'primary expectation.'").  Thus, even taking Plaintiff's allegations in the FAC as true, the second *Penn Central* factor fails to support a takings claim.

"Although a plaintiff's allegations are generally taken as true, the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *see also Caviness*, 590 F.3d at 812.  Accordingly, the first and second *Penn Central* factors again weigh against finding that a regulatory taking has occurred.

### 2. Third *Penn Central* Factor: Character of Governmental Action

The Court next considers the character of Defendant's action.  As the Supreme Court stated in *Lingle*, "the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'—may be

12

relevant in discerning whether a taking has occurred." *Lingle*, 544 U.S. at 539 (citing *Penn Central*, 438 U.S. at 124). "The government generally cannot 'forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Bridge Aina Le'a, LLC*, 950 F.3d at 636 (citing *Lingle*, 544 U.S. at 537).

Here, Plaintiff contends the "gravamen" of the FAC is that the delay in moving forward with development of his property due to Defendant's demands "was not a normal incident of the regulatory process." (FAC at 3.) He instead alleges that "[Defendant's] demands were arbitrary and capricious [and/or] willful and deliberate obstruction of his constitutionally-protected property rights," and "continuing a long history of obstruction." (*Id.*; *see also* FAC ¶ 66.) Specifically, Plaintiff alleges that Defendant's refusal to approve his 2016 application "without the incorporation of a municipal-sized fire suppression system together with its own water supply" did not have the character "of a public program simply adjusting the benefits and burdens of economic life broadly to promote the public good." (FAC ¶¶ 64–65.) The FAC elaborates that

> [Defendant] directly, unreasonably, and disproportionately burdened [P]laintiff for the installation of municipal-sized primary and back-up pumps over 10 times more powerful than KFCSD's own pumps, back-up power, and a water supply over and above water available from KFCSD. The installation of municipal-sized improvements is fairly a responsibility of all KFCSD users, not just [P]laintiff..

(FAC ¶ 65.) Plaintiff contends that any such demands were "beyond" Defendant's authority, given that they were not rooted in "any written or accessible ordinance, policy, or standard applicable" when the application was originally submitted in 2006. (FAC ¶ 65.)

Accepting all of Plaintiff's factual allegations as true, as the Court must at this stage of the proceedings, the character of Defendant's actions in arbitrarily requiring a more advanced fire suppression system as a part of Plaintiff's development could again be construed as "'physical invasion'" of his property. *See, e.g., Laurel Park Cmty., LLC*, 698 F.3d at 1190–91. However, "[e]ven if this factor weighs in favor of finding a taking, this factor is not alone a sufficient basis to find that a taking occurred." *Bridge Aina Le'a, LLC*, 950 F.3d at 636; *see also id.* at 630 ("The first and second *Penn Central* factors are the primary factors."). Because both the first and second *Penn Central* factors weigh against finding that a regulatory taking has occurred, on balance, the

13

Court finds that Plaintiff fails to state a cognizable claim.

### 3. Leave to Amend

The Court finds it appropriate to grant Plaintiff one last opportunity to allege facts amounting to a regulatory taking, as the pleadings may be cured by the allegation of additional facts with regard to the first two *Penn Central* factors. *See* Fed. R. Civ. P. 15(a)(2); *Cook, Perkiss and Liehe, Inc.,* 911 F.2d at 247; *Crowley*, 734 F.3d at 977; *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("when a viable case may be pled, a district court should freely grant leave to amend."). Accordingly, the Court DISMISSES Plaintiff's takings claim with leave to amend.

### B. Plaintiff Fails to State a Cognizable Substantive Due Process Claim

"To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). However, "[t]he Supreme Court has 'long eschewed . . . heightened [means-end] scrutiny when addressing substantive due process challenges to government regulation' that does not impinge on fundamental rights." *Id*. at 1088 (quoting *Lingle*, 544 U.S. at 545). "Accordingly, the 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks*, 540 F.3d at 1088 (citing *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008)); *see also Matsuda v. City and Cty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) ("state action which 'neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights' will violate substantive due process only if the action is 'not rationally related to a legitimate governmental purpose.'").

Thus, "[w]hen executive action like a discrete permitting decision is at issue, only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks*, 540 F.3d at 1088 (internal quotation marks omitted). "Official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary." *Id*. at 1089. For example, the Ninth Circuit has recognized that a meritorious due process claim may exist

"where a 'land use action lacks any substantial relation to the public health, safety, or general welfare.'" *N. Pacifica LLC*, 526 F.3d at 484 (citing *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007)).

As stated above, Plaintiff pleads that Defendant "directly, unreasonably, and disproportionately burdened" him with the installation of a "municipal-sized" fire suppression system, and such improvements were "fairly a responsibility of all KFCSD users, not just [P]laintiff." (FAC ¶ 65.) Plaintiff reiterates his allegations that Defendant "had no basis" to make such a demand because the conditions of approval delegated authority and responsibility of the design of the water line extension to KFCSD. (FAC ¶ 71.) Thus, Plaintiff contends Defendant's demand "was arbitrary and capricious," and/or "a willful and deliberate effort to obstruct the project." (*Id*.) Plaintiff further alleges that "[Defendant's] refusal did not substantially advance legitimate state interests" because "[Defendant] lacked any authority or responsibility for the design of the water system" and by trying to require improvements that would render development of the lots "uneconomic," "[Defendant] acted to impede the development of housing" protected by law. (FAC ¶ 72.) Finally, Plaintiff alleges that upon approval of his vesting tentative map, he "enjoyed a constitutionally protected right to finalize his project in substantial compliance with the terms of approval," and "[Defendant's] demands for a municipal-sized fire suppression system" denied Plaintiff his rights to due process. (FAC ¶ 73.)

Based on the facts alleged in the operative pleading, Plaintiff again fails to meet the "'exceedingly high burden'" required to show that Defendant or its employees behaved in a constitutionally arbitrary fashion. *See Shanks*, 540 F.3d at 1088. Plaintiff's allegations "do[] no more than present the type of 'run of the mill dispute between a developer and a [county] planning agency' that fail[] to implicate concerns about due process deprivations." *Teresi Inv. III v. City of Mountain View*, 609 Fed. Appx. 928, 930 (9th Cir. 2015). The conduct with which Plaintiff takes issue, "a routine, even if perhaps unwise or legally erroneous, executive decision" to deny a development application due to fire suppression concerns, falls short of qualifying as constitutionally arbitrary. *Shanks*, 540 F.3d at 1089. "It is 'at least fairly debatable'" that Defendant rationally furthered its legitimate concern for public safety in demanding a more

15

comprehensive fire suppression system as a part of Plaintiff's property development plan. *Id*. "When reviewing a substantive due process challenge, this suffices; our task is not to balance 'the public interest supporting the government action against the severity of the private deprivation.'" *Id*. (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1238 (9th Cir. 1994)). "[I]n a substantive due process case such as this, our concern is with the rationality of a government action regardless of its impact." *Kawaoka*, 17 F.3d at 1238.

In his opposition, Plaintiff cites to several cases preceding the Ninth Circuit's decision in *Shanks* and attempts to distinguish *Shanks* by asserting that Defendant abused its power, "lacking 'any reasonable justification in the service of a legitimate governmental objective.'" (Doc. 38 at 11–18.) In support of these arguments, Plaintiff cites facts surrounding the approval of his application in 2012. (*Id*. at 15–17; *see also* FAC ¶¶ 38, 41, 43, 45.) This Court, however, dismissed Plaintiff's analogous substantive due process arguments in earlier litigation. *See Honchariw v. Cty. of Stanislaus*, 530 F. Supp. 3d 939, 951–52 (E.D. Cal. 2021) (citing *Honchariw v. Cty. of Stanislaus*, Case No. 1:16-cv-01183-LJO-BAM, 2016 WL 6723957, at 6–7 (E.D. Cal. Nov. 14, 2016)[7]). Moreover, the Supreme Court's cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in a constitutional sense.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). As previously noted, the Court finds that Plaintiff fails to plead facts amounting to "the most egregious official conduct." *Id*.

Because the pleadings can be cured by the allegation of additional facts indicating constitutionally arbitrary conduct by Defendant, the Court again affords Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Cook, Perkiss and Liehe, Inc.,* 911 F.2d at 247; *Crowley*, 734 F.3d at 977; *Cafasso, U.S. ex rel.*, 637 F.3d at 1058. Therefore, the Court DISMISSES Plaintiff's substantive due process claim with leave to amend.

## V. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion is

---

[7] In the present matter, Defendant filed a notice of related case as to *Honchariw v. Cty. of Stanislaus*, No. 1:16-cv-01183-DAD-BAM. (*See* Doc. 3.)

GRANTED with leave to amend.  Within twenty-one (21) days, Plaintiff SHALL file: (a) a second amended complaint in accordance with the directives in this order, or (b) a statement that he elects not to proceed with this action.  If Plaintiff does not file a second amended complaint in compliance with the directives in this order within the specified time frame, the case will be dismissed without further notice.

IT IS SO ORDERED.

Dated:   **April 12, 2023**                    /s/ *Sheila K. Oberto*                  .
                                         UNITED STATES MAGISTRATE JUDGE