# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS HONCHARIW, Trustee, Honchariw Family Trust,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF STANISLAUS,<br><br>Defendant. | Case No. 1:21-cv-00801-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>(Doc. 45) |

## I.   INTRODUCTION

Before the Court is Defendant County of Stanislaus' Motion to Dismiss Plaintiff Nicholas Honchariw's Second Amended Complaint[1] (the "Motion"). (Doc. 35.) On May 30, 2023, Plaintiff filed his opposition (Doc. 48), and Defendant filed its reply on June 5, 2023 (Doc. 49). The hearing set for June 21, 2023, on the Motion was vacated and the matter was taken under submission.[2] (Doc. 50.) Having considered the briefing, and for the reasons set forth below, Defendant's Motion will be DENIED.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In considering Defendant's Motion, the Court accepts as true all of the following factual allegations contained in the SAC. *See, e.g., Rotkiske v. Klemm*, 140 S. Ct. 355, 359 n.1 (2019) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

---
[1] The operative pleading is Plaintiff's Second Amended Complaint ("SAC"). (Doc. 44.)
[2] The parties previously consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 28.)

Plaintiff, in his capacity as trustee for the Honchariw Family Trust, sought to divide land in the Knights Ferry area of Stanislaus County into a development of several residential lots and one undeveloped parcel (SAC ¶¶ 1–3). *See also Honchariw v. Cty. of Stanislaus,* 51 Cal. App. 5th 243, 246–47 (2020).³ The Board of Supervisors of the County of Stanislaus approved the vesting tentative map application for Plaintiff's development subject to several conditions of approval. *Id.* at 249. One of these conditions of approval was a site improvement request for an extension of fire hydrants to provide a higher level of fire protection for the development. *Id.* at 250.

The current dispute between the parties stems from Plaintiff's submission of a proposed final subdivision map in April 2016, with plans and specifications in accordance with Defendant's previously requested conditions of approval. (SAC ¶¶ 49–50). *See also Honchariw,* 51 Cal. App. 5th at 250. In November 2016, Stanislaus County's Department of Public Works ("DPW") sent Plaintiff's engineers a letter stating it could not approve the proposed plans for the water system without further information about several items, including fire hydrants (SAC ¶ 51). *Honchariw,* 51 Cal. App. 5th at 250–51. At a meeting in March 2017 with DPW, Plaintiff was informed that his proposed plans did not comply with the conditions of approval. *Id.* at 251. DPW interpreted the conditions of approval as requiring a fire suppression system based on functional fire hydrants, which were hydrants that could meet fire flows for volume and pressure required by the California Fire Code (SAC ¶ 51). *Honchariw,* 51 Cal. App. 5th at 251–53. In June and July of 2017, Plaintiff and DPW exchanged correspondence in an effort to resolve their dispute. *Id.* at 251–52.

After reaching an impasse, in August 2017, Plaintiff filed a Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages in state court raising three state law claims seeking a writ of mandate, declaratory relief, and damages (SAC ¶ 58; *see* Doc. 1 at 8–16). *Honchariw*, 51 Cal. App. 5th at 253. The trial court issued a judgment denying the petition, and Plaintiff appealed. *Id.* The California Court of Appeal reversed, concluding that Defendant had

---

³ The Court previously took judicial notice of the facts and proceedings in *Honchariw v. Cty. of Stanislaus*, 51 Cal. App. 5th 243 (2020), given its direct relationship with the present case (Doc. 29 at 2 n.3). *See* Fed. R. Evid. 201(c)(1) (the court may take judicial notice on its own); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). Pursuant to Rule 201, the Court also granted Defendant's prior request to take judicial notice of Plaintiff's vesting tentative map, which was made part of Defendant's records as to Plaintiff's subdivision application. (Doc. 36; *see* Doc. 41 at 2 n.4.)

misinterpreted the conditions of approval and remanded the matter to the trial court to determine the terms of the writ of mandate, which, at a minimum, would require Defendant and its officials to interpret the conditions of approval in accordance with its opinion (SAC ¶ 58). *Honchariw*, 51 Cal. App. 5th at 246, 256.

In April 2021, Plaintiff filed a Verified Supplemental and Amended Complaint[4] in state court asserting three state and federal claims arising from Defendant's rejection of his April 2016 proposed final subdivision map for his failure to comply with the conditions of approval. Plaintiff alleged (1) a violation of California Government Code § 815.6 (Supp. Compl. ¶¶ 10–14); (2) inverse condemnation and temporary taking under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 19 of the California Constitution; and 42 U.S.C. § 1983 (Supp. Compl. ¶¶ 15–21); and (3) denial of his substantive due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article 1, Section 7 of the California Constitution; and 42 U.S.C. § 1983 (Supp. Compl. ¶¶ 22–25).

In May 2021, Defendant removed the action to this federal court. (Doc. 1.) On December 3, 2021, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff's claims were procedurally and/or substantively defective. (Doc. 15.) On November 7, 2022, this Court granted Defendant's motion in part, dismissing without leave to amend Plaintiff's claim under California Government Code § 815.6, and dismissing with leave to amend Plaintiff's takings and substantive due process claims. (Doc. 29.)

Plaintiff timely filed his First Amended Complaint, proceeding with the remaining two claims. (Doc. 32.) On April 13, 2023, the Court granted Defendant's motion to dismiss with leave to amend. (Doc. 41.)

Plaintiff filed his SAC on May 3, 2023. (Doc. 44.) Defendant filed the instant Motion pursuant to Rule 12(b)(6), asserting that Plaintiff's operative complaint, as amended, again fails to state plausible claims for relief. (Doc. 45.)

---

[4] The original pleading, Plaintiff's Verified Supplemental and Amended Complaint ("Supp. Compl."), is attached to Defendant's Notice of Removal (Doc. 1) as Exhibit 36. (*See* Doc. 1 at 237–45.)

### III.  LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim," and dismissal is "proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). "To survive a motion to dismiss, the plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At this stage, the Court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. "'[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Twombly*, 550 U.S. at 562.

In resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

To the extent the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Federal Rule of Civil Procedure 15(a)(2) advises that "[t]he court should freely give leave when justice so requires." "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

## IV.  DISCUSSION

### A.  Defendant's Request for Judicial Notice

The Court first addresses Defendant's request for judicial notice.  (Doc. 46.)  Federal Rule of Evidence 201 ("FRE 201") allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Civ. P. 201(b).

Defendant requests that the Court take judicial notice of a version of Plaintiff's SAC in which Defendant highlighted language changed or added to Plaintiff's prior pleading.  (Doc. 46.)  The highlighting consists of sentences added to portions of Plaintiff's SAC, as well as words and clauses interspersed among sentences throughout the pleading.  (*Id.*)  This highlighting does not constitute a "fact" that meets the FRE 201 standard, and thus, it is not properly the subject of judicial notice at this time.  Accordingly, the Court DENIES Defendant's request for judicial notice.  *See, e.g.*, *Uyanik v. Wawanesa Gen. Ins. Co.*, No. 22-cv-02361-NC, 2022 WL 16625800, at *3 (N.D. Cal. June 23, 2022); *Allen v. Cty. of Lake*, No. 14–cv–03934–TEH, 2014 WL 4979348, at *2 (N.D. Cal. Oct. 6, 2014).

### B.  Plaintiff States a Cognizable Regulatory Takings Claim

#### 1.  Legal Standard

The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation.  U.S. Const. Amend. V.  There are three types of regulatory takings.  *McCarron v. Cty. of Ventura*, No. CV 21-5234 MWF (PDx), 2022 WL 3575319, at *2 (C.D. Cal. July 8, 2022).  "Of these, '[t]wo types of regulatory actions—*Loretto* and *Lucas* takings—are *per se* takings.'"  *Id.* (quoting *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020)).  *Loretto* applies where the government "requires an owner to suffer a permanent physical invasion of her property," even if such a physical invasion is minor.  *McCarron*, 2022 WL 3575319, at *2 (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)).  *Lucas* applies "to regulations that completely deprive an owner of '*all* economically beneficial us[e]' of her property.'"  *McCarron*,

5

2022 WL 3575319, at *2 (citing *Lingle*, 544 U.S. at 538; *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)).

"The third type of regulatory taking is a *Penn Central* taking." *McCarron*, 2022 WL 3575319, at *2; *see also Penn Cen. Transp. Co. v. City of N.Y.*, 438 U.S. 104 (1978) ("*Penn Central*"). "Under *Penn Central*, a taking takes place when regulatory actions [occur] that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner with the inquiry focus[ing] directly upon the severity of the burden that government imposes upon private property rights." *Colony Cove Props., LLC v. City of Carson*, No. CV 14-3242 PSG (PJWx), 2014 WL 12629951, at *9 (C.D. Cal. Dec. 18, 2014) (internal quotation marks omitted) (citing *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013)). The Court evaluates the following three factors of "particular significance" identified in *Penn Central*: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *DoorDash, Inc. v. City and Cty. of San Francisco*, No. 21-cv-05502-EMC, 2022 WL 867254, at *18 (N.D. Cal. Mar. 23, 2022) (citing *Penn Central*, 438 U.S. at 124).

Evaluations of regulatory takings claims are characterized by "ad hoc, factual inquiries." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). "Although the *Penn Central* balancing test is necessarily quite fact specific, federal courts often examine these factors at the motion to dismiss stage to assure plaintiffs have satisfied their burden to establish the plausibility of their claims." *Pakdel v. City and Cty. of San Francisco*, No. 17-cv-03638-RS, 2022 WL 14813709, at *6 (N.D. Cal. Oct. 25, 2022); *see also Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 966 (9th Cir. 2003).

### 2. Analysis

In his opposition, Plaintiff contends that Defendant's refusal to approve his improvement plans constituted a taking under *Lucas*. (Doc. 48 at 5, 8.) In the SAC and his opposition to Defendant's Motion, however, Plaintiff acknowledges that the alleged taking was temporary and he was not deprived of all economically viable use of his property. (*See, e.g.,* SAC ¶ 67 ("[Defendant]

6

finally approved his final map plans in 2021, so this claim is for a temporary taking, but [P]laintiff had suffered significant costs as a result of the delay."); Doc. 48 at 8 ("the confiscation was only temporary.").) "Anything less than a 'complete elimination of value,' or a 'total loss,' . . . would require the kind of analysis applied in *Penn Central*." *Tahoe-Sierra*, 535 U.S. at 330 (citing *Lucas*, 505 U.S. at 1019–20 n.8); *see, e.g., Colony Cove Props., LLC*, 2014 WL 12629951, at *9 (dismissing a *Lucas* claim without leave to amend where plaintiff's complaint undermined its claim that defendant's decisions deprived it of all economically productive or beneficial use of the land.). Thus, Plaintiff fails to state a plausible claim of an impermissible taking under *Lucas*. With the above principles in mind, the Court next evaluates whether the SAC pleads a cognizable regulatory takings claim under *Penn Central*.[5]

As for the second *Penn Central* factor, Plaintiff adequately pleads that Defendant interfered with his investment-backed expectations. "[T]his factor must consider the extent to which the challenged regulation departs from or extends beyond past or conceivable future regulatory developments." *Pakdel*, 2022 WL 14813709, at *7 (citing *Kaiser Aetna v. United States*, 444 U.S. 164, 178 (1979)). Thus, Plaintiff's SAC must sufficiently plead how Defendant's regulation interfered with Plaintiff's plausibly reasonable expectations to finalize the development plans for his property. *See Pakdel*, 2022 WL 14813709, at *7.

In short, Plaintiff alleges that he secured Defendant's approval of his final subdivision map after investing significant time and money into the project, and thus, he had a right to finalize his property, but Defendant made demands for additional improvements "out of the blue" and at the eleventh hour. (*See* SAC at 1–4; SAC ¶¶ 53–55, 59–60.) The SAC alleges that "[a]lthough there was no question that the plans submitted by [P]laintiff with his proposed final map complied with applicable ordinances, policies, and standards, [Defendant] refused to approve his final map upon submission in 2016." (SAC at 2.) Plaintiff contends that Defendant demanded he "install a municipal-sized fire suppression system on the water line extension wholly out of proportion to his

---

[5] The Court observes that despite having been granted leave to amend twice, Plaintiff has failed to correct the factual deficiencies identified by the Court as to first *Penn Central* factor, the economic impact of Defendant's regulation on Plaintiff. Accordingly, as noted in the Court's prior order, Plaintiff fails to plausibly plead economic impact for purposes of his regulatory takings claim (Doc. 41 at 9–11). *See Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022).

small subdivision and the [Knights Ferry Community Services District ("KFCSD")] system and provide an independent water supply for the massive amounts of water required to make the system operational." (*Id.*)  Plaintiff alleges Defendant had no right to make such demands, given that the prior conditions of approval "delegated responsibility for water line improvements, including fire suppression, to KFCSD, which had approved the plans." (*Id.*)  Moreover, Defendant's Planning Department had made representations that fire suppression would be addressed upon construction of the homes for the project, "years down the road, with water to be provided for fire suppression as well as domestic use by KFCSD." (*Id.* at 2–3.)  Plaintiff pleads that Defendant's Planning Department confirmed these representations at the Board hearing approving his tentative vesting map and again to Plaintiff by conference call, and Plaintiff had accepted the conditions of approval based on these representations.  (*Id.* at 3.)  The SAC alleges that despite Defendant finally withdrawing its demands, approval of his tentative vesting map did not occur until four years later.  (*Id.*)  Plaintiff alleges that when Defendant finally agreed to approve his final map, Defendant abandoned its demand for a full fire suppression system, but by that point, Plaintiff had already incurred significant costs.  (SAC ¶ 60.)  Thus, Plaintiff pleads that Defendant's disapproval of his final map plans "was only the most recent of many efforts" to obstruct Plaintiff's plans to develop his property since his original subdivision application in 2006.  (SAC ¶ 68.)

The Court accepts the facts pleaded in the SAC as true, and construes them in the light most favorable to Plaintiff.  *Colony Cove Props., LLC*, 2014 WL 12629951, at *10 (citing *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067–68 (9th Cir. 2009)).  As such, the Court finds that Plaintiff has adequately pleaded sufficient facts to support the allegation that Defendant's actions interfered with his plausible distinct investment-backed expectations to finalize the development plans for his property.  *See, e.g.*, *Colony Cove Props., LLC*, 2014 WL 12629951, at *10 (finding the plaintiff pled sufficient facts as to the second *Penn Central* factor where the complaint alleged plaintiff's expectations were based on the terms of the ordinance and guidelines at issue and how the defendant's board had previously analyzed and calculated rent); *DoorDash, Inc.*, 2022 WL 867254, at *19 (denying a motion to dismiss a takings claim where, *inter alia*, factual questions remained as to the second *Penn Central*

factor and finding that this factor could plausibly be resolved in the plaintiffs' favor).

The Court next considers the third *Penn Central* factor, or the character of Defendant's action. "A government's action is more likely to support a *Penn Central* taking 'when the interference with property can be characterized as a physical invasion by government' and not 'when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Colony Cove Props., LLC*, 2014 WL 12629951, at *11 (quoting *MHC Fin. Ltd. P'ship*, 714 F.3d at 1128). "The government generally cannot 'forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Bridge Aina Le'a, LLC*, 950 F.3d at 636 (citing *Lingle*, 544 U.S. at 537).

Here, as with his prior pleading, Plaintiff alleges that the "gravamen" of the SAC is that the delay in moving forward with development of his property due to Defendant's demands "was not a normal incident of the regulatory process." (SAC at 3.) He contends defendant's disapproval was "arbitrary and capricious [and/or] willful and deliberate obstruction of his constitutionally-protected property rights to finalize his approved tentative subdivision map," "continuing a long history of obstruction by [Defendant]." (SAC at 3–4; *see also* SAC ¶ 66.) Plaintiff alleges that Defendant's demands were "beyond its authority," given that the demands were "not rooted in any written or accessible ordinance, policy, or standard applicable when the application was submitted in 2006." (SAC ¶ 66.) The conditions of approval "'unambiguously' delegated authority and responsibility for the design of the water system extension to KFCSD." (*Id.*) And, as provided above, Defendant's Planning Department had made representations that fire suppression would be addressed upon construction of the homes for the project, "years down the road, with water to be provided for fire suppression as well as domestic use by KFCSD." (*Id.* at 2–3.)

Accepting all of Plaintiff's factual allegations as true, as the Court must at this stage of the proceedings, the character of Defendant's actions in arbitrarily requiring a more advanced fire suppression system as a part of Plaintiff's development can again be plausibly construed as "physical invasion" of his property. *See, e.g., Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1190–91 (9th Cir. 2012).

In sum, Plaintiff has adequately pled the second and third *Penn Central* factors.

Accordingly, the Court DENIES Defendant's request to dismiss Plaintiff's takings claim. *See Colony Cove Props., LLC*, 2014 WL 12629951, at *9 (citing *Garneau v. City of Seattle*, 147 F.3d 802, 807 (9th Cir. 1998)).

### C. Plaintiff States a Cognizable Substantive Due Process Claim

To state a substantive due process claim, the plaintiff must plead, as a threshold matter, that "a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). However, "[t]he Supreme Court has 'long eschewed . . . heightened [means-end] scrutiny when addressing substantive due process challenges to government regulation' that does not impinge on fundamental rights." *Id.* at 1088 (quoting *Lingle*, 544 U.S. at 545). "Accordingly, the 'irreducible minimum' of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Shanks*, 540 F.3d at 1088 (citing *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008)).

Thus, "[w]hen executive action like a discrete permitting decision is at issue, only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Shanks*, 540 F.3d at 1088 (internal quotation marks omitted). "Official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary." *Id.* at 1089. The Ninth Circuit has recognized that a meritorious due process claim may exist "where a 'land use action lacks any substantial relation to the public health, safety, or general welfare.'" *N. Pacifica LLC*, 526 F.3d at 484 (citing *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007)). For example, in *Shanks*, the Ninth Circuit found that the plaintiffs failed to state a substantive due process claim where there was no suggestion of "a sudden change in course, malice, bias, pretext or, indeed, anything more than a lack of due care on [the defendant's] part." *Shanks*, 540 F.3d at 1089.

Here, unlike in *Shanks*, Plaintiff alleges Defendant had a "sudden change in course" by making demands for additional improvements "out of the blue" and at the eleventh hour. (*See* SAC at 1–4; SAC ¶¶ 53–55, 59–60.) "Substantive due process is intended to protect from arbitrary government action." *Sherouse v. City of Costa Mesa*, No. SACV 22-756 JVS (ADSx), 2022 WL

18278382, at *4 (C.D. Cal. Oct. 20, 2022) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). As described above, Plaintiff pleads that Defendant's disapproval of his tentative subdivision map was arbitrary and capricious, and a willful and deliberate effort to obstruct his project, "continuing a long history of obstruction by [Defendant]." (SAC at 3–4; *see also* SAC ¶¶ 66, 72.) Plaintiff further alleges that Defendant "had no rational basis to disapprove [his] final map." (SAC ¶ 72.)

Accepting the facts as pleaded in the SAC as true and construing them in the light most favorable to Plaintiff, *Colony Cove Props., LLC*, 2014 WL 12629951, at *10, the Court finds that Plaintiff has sufficiently pleaded arbitrary conduct amounting to "more than a lack of due care on [Defendant's] part." *Shanks*, 540 F.3d at 1089; *see, e.g.*, *Salkhi v. Dueweke*, No. 20-cv-06047-YGR, 2021 WL 2224333, at *4 (N.D. Cal. June 2, 2021) ("the allegations against [the defendant], while inartfully pled, collectively suggest that she acted improperly for reasons unrelated to the merits of the [citations at issue] . . . Indeed, the lack of justification itself only goes to support a finding that [defendant] acted arbitrarily and irrationally."). Accordingly, the Court DENIES Defendant's request to dismiss Plaintiff's substantive due process claim.

## V.   CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff has plausibly alleged a regulatory takings claim and a substantive due process claim. Accordingly, Defendant's motion to dismiss (Doc. 45) is DENIED.

IT IS SO ORDERED.

Dated:   **July 18, 2023**                           /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE