**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS HONCHARIW, Trustee, Honchariw Family Trust,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF STANISLAUS,<br><br>Defendant. | Case No. 1:21-cv-00801-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 61) |

## I. INTRODUCTION

Plaintiff Nicholas Honchariw ("Plaintiff"), in his capacity as trustee for the Honchariw Family Trust, brings this action against Defendant County of Stanislaus ("the County") alleging causes of action under 42 U.S.C. § 1983 for a temporary taking and denial of due process under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 7 and 19 of the California Constitution. (Doc. 44.)[1] On May 28, 2024, the County filed a motion for summary judgment. (Doc. 61.) Pursuant to stipulation (Doc. 60), Plaintiff filed his opposition on July 2, 2024 (Doc. 63)[2], and the County replied on July 23, 2024 (Doc. 64). After reviewing the parties' papers, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the Court vacated the hearing set for August 7, 2024. (Doc. 65.)

For the reasons set forth below, the County's motion for summary judgment will be granted.[3]

---

[1] The operative pleading is Plaintiff's Second Amended Complaint ("SAC"). (Doc. 44.)
[2] In the absence of prejudice, which the County has not shown, the Court has considered Plaintiff's opposition in its entirety despite it exceeding the 25-page limit. (*See* Doc. 56 at 4.)
[3] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. (*See* Doc. 28.)

## II.   SUMMARY OF RELEVANT EVIDENCE[4]

### A.   The Property

At all times relevant to this action, the property at issue in the litigation ("Property") comprised 33 acres in unincorporated Stanislaus County, near the community of Knights Ferry, California. (Doc. 61-1, JSUF ¶ 1.) The Property was subject to different zoning designations and included a 13-acre area with a historical zoning designation to the east, and a 20-acre area with an agricultural zoning designation to the west. (*Id.*) The Property includes a three-bedroom house with a living room, kitchen, one full bath, an attic, and a full basement. (*Id.* ¶ 2.) In approximately 2008, Plaintiff renovated the house, including installing new electrical and plumbing systems, remodeling the kitchen and bathroom, and renovating the septic system. (*Id.*)

Plaintiff's predecessor-in-interest, Reverend Iwan Honchariw, acquired the Property in 1973. (Doc. 61-1, JSUF ¶ 3.) Reverend Honchariw purchased the Property as a long-term investment, which he intended to operate and develop while using the small house as his residence. (*Id.* ¶ 5.) The Property had been operated for years as a family resort. (*Id.*) Reverend Honchariw had longer-term plans to subdivide the Property into multiple small residential lots in the eastern area with historic zoning and residential lots in the western area with agricultural zoning. (*Id.*) In 1991, Reverend Honchariw transferred the Property to the Honchariw Family Trust ("Trust"). (*Id.* ¶ 3.) Plaintiff became the successor trustee of the Trust in 1992. (*Id.*)

### B.   Application to Subdivide the Property

In 2006, Plaintiff filed an application with the County for a "Vesting Tentative Subdivision Map" ("VTSM") under the California Subdivision Map Act, Cal. Gov't Code § 64410 *et seq.*,[5]

---

[4] The evidence adduced by the parties in conjunction with this motion comprises: (i) the parties' Joint Statement of Undisputed Facts ("JSUF") (Doc. 61-1); (ii) the County's Separate Statement of Undisputed Facts ("Def.'s SSUF") (Doc. 61-2); (iii) Declaration of Angela Freitas ("Freitas Decl.") (Doc. 61-3); (iv) Declaration of Frederic Clark ("Clark Decl.") (Doc. 61-4); (v) Declaration of Jeremy Ballard ("Ballard Decl.") (Doc. 61-5); (vi) Declaration of Matthew D. Zinn ("Zinn Decl.") (Doc. 61-6); (vii) Declaration of David Wraa ("Wraa Decl.") (Doc. 61-7); (viii) exhibits to the foregoing declarations (Doc. 61-8); (ix) Declaration of Plaintiff Nicholas Honchariw ("Honchariw Decl.") (Doc. 63-1); and (x) Plaintiff's Response to the County's Separate Statement of Undisputed Facts ("Plt.'s Resp. to Def.'s SSUF") (Doc. 63-2). The summary of relevant evidence is distilled from these sources.

[5] The Subdivision Map Act ("Act") requires every subdivision of land, with few exceptions, to be approved by the local government. *See Witt Home Ranch, Inc. v. Cty. of Sonoma*, 165 Cal. App. 4th 543, 551 (2008). The Act ensures local governments have "the power to regulate the manner in which their communities grow" and necessary improvements are made before new development is built. *Id.* The Act provides a two-step process for review of proposed subdivisions creating five or more parcels. *See* Cal. Gov't Code § 66426. The applicant first submits either a tentative map or vesting

2

proposing to subdivide the Property into eight lots and a remainder.[6]  (Doc. 61-1, JSUF ¶ 6.) Specifically, the VTSM provided that the Property be divided into three five-acre lots in the western portion of the Property; four one-acre lots on the north side of the Property; and one river-front half-acre lot including the existing house at the corner of the property nearest Knights Ferry, with balance of the Property consisting of a large remainder.  (*Id*. ¶ 10.)

The County's Board of Supervisors ("Board") denied the VTSM in 2009.  (Doc. 61-1, JSUF ¶ 7.)  Plaintiff filed a petition for writ of mandate and complaint in state court to overturn the denial.  (*Id*. ¶ 8.)  The superior court denied the petition, but the appellate court reversed and ordered re-consideration of the VTSM under the California Housing Accountability Act.  (*Id*.)

**C.    Conditional Approval of the VTSM**

In 2012, the Board approved the VTSM, subject to conditions of approval ("Conditions of Approval").  (Doc. 61-1, JSUF ¶ 9.)   The Conditions of Approval included three conditions (numbers 24, 25, and 40) addressing improvements related to water service for domestic and fire suppression purposes for the four one-acre lots.[7]  (*Id*. ¶ 11.)  The three five-acre lots would be served

---

tentative map depicting the proposed subdivision. *Id*. §§ 66424.5, 66452. The local government may approve the map, conditionally approve it, or disapprove it. *Id*. §§ 66452.1, 66452.2. The applicant then prepares a detailed final map for approval, including depiction of required infrastructure and improvements to serve the new lots in the subdivision. *Id*. §§ 66456, 66457; *Witt Home Ranch*, 165 Cal. App. 4th at 551. The subdivider must ensure the final map is consistent with the tentative map and complies with the conditions of approval of the tentative map. Cal. Gov't Code §§ 66458(a). The map is then considered by the local legislative body, *id*. § 66457(a), here the County Board of Supervisors, for final approval.

[6] The Court has previously taken judicial notice of the VTSM. (*See* Doc. 41 at 2 n.4.)

[7] Conditions of Approval numbers 24, 25, and 40 read as follows:

> 24.    Prior to recording the "Final" Subdivision Map. the applicant shall contact the Knights Ferry Community Services District (KFCSD) and submit a written application to obtain water service (domestic & fire suppression) for all lots within the Community Services District boundaries, in accordance with all applicable KFCSD rules, regulations, standards, and ordinances, and shall cause all public improvements required by KFCSD to be completed and accepted for public use.
>
> 25.    Prior to recording the "Final" Subdivision Map, water service provided by the Knights Ferry Community Services District, shall be established, constructed and operational for the four (4) proposed 1-Acre Lots, identified as being Lots No. 4-7 on the [VTSM], and the designated "Remainder" parcel.
>
> [. . .]
>
> 40.    Fire hydrants shall be extended to serve any new structures. on parcels within the Community Services District boundaries, with no structure residing further than 1000 feet from a hydrant or as required by Knights Ferry Community Services District ordinance, whichever provides a higher level of fire protection.

(Doc. 61-3, Freitas Decl. ¶ 5; Doc. 61-8, Ex. 4.)

3

by their own wells, and the remainder had an existing water connection. (*Id.* ¶ 12.) That water connection was to the Knights Ferry Community Services District ("KFCSD") water system, a small antiquated rural system with substandard distribution facilities. (*Id.* ¶ 13.)

In April 2016, Plaintiff submitted plans to the County showing proposed infrastructure and improvements to address the Conditions of Approval for the VSTM. (Doc. 61-1, JSUF ¶ 15.) The plans were based upon connection to, and reliance upon water from, KFCSD. (*Id.*)  At the request of KFCSD, he provided stub-outs for hydrants instead of hydrants themselves.  Unless and until KFCSD's water system was upgraded, the water system could not provide normal flows. (*Id.*)

The County responded in November 2016 in a letter that cited several deficiencies in the plans, including Plaintiff's failure to "provide calculations to show that pressure and flow conditions [for fire suppression] are met." (Doc. 61-1, JSUF ¶ 16.)  Plaintiff then re-submitted plans and met with County staff. (*Id.* ¶ 17.)

**D.    Disagreement over the Conditions of Approval for the VTSM**

In early 2017, it became clear that Plaintiff and County staff disagreed about the meaning of the Conditions of Approval related to fire suppression infrastructure for the four one-acre lots on the VTSM. (Doc. 61-1, JSUF ¶ 18.)  Plaintiff took the position that the Conditions of Approval required him to design infrastructure—including fire hydrants—sufficient to handle fire suppression flows should KFCSD upgrade its system to be able to supply them. (*Id.* ¶ 19.)  Further, he took the position that the actual fire suppression requirements—and the source of water to meet them— would be resolved by lot owners at the building permit stage. (*Id.*)

The County took the position that Conditions of Approval's requirement for fire hydrants "to serve any new structures" (*see* fn.5, *supra*) meant that Plaintiff was required to design and construct (or bond for the construction of) functioning fire hydrants, including a water supply capable of providing fire suppression flows, prior to final map approval in order to protect the future residents of the subdivision from life safety hazards, including wildfire. (Doc. 61-1, JSUF ¶ 20; Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶ 4.)

In August 2017, Plaintiff filed another petition for writ of mandate and complaint in state court relating to the disagreement over the conditions of approval related to fire suppression for the

four one-acre lots on the VTSM. (Doc. 61-1, JSUF ¶ 21.) The superior court denied the petition in early 2018. (*Id*. ¶ 22.) The court of appeals reversed, and the superior court issued a writ of mandate on April 15, 2021.[8] (*Id*. ¶¶ 23–24.) Two weeks later, the County withdrew its fire suppression demands for the VTSM. (*Id*.¶ 25.)

**E.     The County Approves a Final *Parcel* Map for the Property**

To date, Plaintiff has not submitted a final version of the VTSM for approval or made (or bond for) any improvements required by the Conditions of Approval. (Doc. 61-1, JSUM ¶ 26.) Instead, while the state court litigation was pending in 2019, Plaintiff applied for a "vesting tentative parcel map" that would create three five-acre lots on the western portion of the Property and an approximately 18-acre remainder.[9] (*Id*. ¶ 27.) The County approved Plaintiff's final parcel map for the Property in 2023. (*Id*. ¶ 28.)

In July 2023, Plaintiff sold the three five-acre lots to a single buyer for $1.15 million. (Doc. 61-1, JUSF ¶ 29.) After the purchase, the buyer applied to the County for, and the County approved, a merger of two of the five-acre parcels into one ten-acre parcel. (*Id*. ¶ 30.) The value of the approximately 18-acre remainder retained by Plaintiff following the sale of 15 acres in 2023 retains "significant value."[10] (Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶ 8.)

**F.     Plaintiff Files the Present Suit for Damages**

Following the superior court's issuance of the writ of mandate in 2021, Plaintiff filed a supplemental complaint in the state court asserting three state and federal claims arising from the County's rejection of the VTSM for his failure to comply with the Conditions of Approval. Plaintiff alleged (1) a violation of California Government Code § 815.6; (2) inverse condemnation and temporary taking under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 19 of the California Constitution; and 42 U.S.C. § 1983; and (3) denial of his substantive

---

[8] This Court has previously taken judicial notice of the facts and proceedings in *Honchariw v. Cty. of Stanislaus*, 51 Cal. App. 5th 243 (2020). (*See* Doc. 29 at 2 n.3; Doc. 41 at 2 n.4.)

[9] A subdivider seeking to create four or fewer new parcels submits a "parcel map," rather than a subdivision map. Cal. Gov't Code § 66426. "Parcel map procedures are considerably simpler, and parcel maps can usually be processed far more quickly than [subdivision] maps." Curtin, *et al*., CALIFORNIA SUBDIVISION MAP ACT AND THE DEVELOPMENT PROCESS § 3.9 (Con't Ed. Bar 2d ed. 2023)); *see also* Cal. Gov't Code § 66411.1 (limiting improvements that may be required in parcel maps).

[10] As of March 2017, the value of the remainder was appraised at $780,000. (Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶ 9.)

due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution; Article 1, Section 7 of the California Constitution; and 42 U.S.C. § 1983.  (Doc. 1 at 237–45.)  The County removed the action to this Court in May 2021.  (*See* Doc. 1.)

The County filed three motions to dismiss.  (Docs. 15, 35, 45.)  The Court granted the first two motions, dismissing Honchariw's state law claim without leave to amend, and twice dismissing the takings and substantive due process claims with leave to amend.  (Docs. 29, 41.)  The Court denied the County's third motion to dismiss directed to Plaintiff's Second Amended Complaint ("SAC").  (Doc. 51.)

### III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict in favor of the nonmoving party."  *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party."  *Id.*  By contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, then the nonmoving party must go beyond the

allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a [factfinder] could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV. DISCUSSION

### A. Plaintiff Cannot Prevail on His Regulatory Takings Claim under *Penn Central*

As this Court has previously held (*see* Docs. 29, 41, 51), Plaintiff's regulatory takings claim is governed by the Supreme Court's decision in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) ("*Penn Central*"). Under *Penn Central*, three factors are of "particular significance" in determining whether a regulatory taking has occurred: (1) "[t]he economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." *Penn Central*, 438 U.S. at 124. "'Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law,' . . . and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values." *Id*. (quoting *Pa. Coal Co. v. Mahon,*

7

260 U.S. 393, 413 (1922)). "The first and second *Penn Central* factors are the primary factors." *Bridge Aina Le'a, LLC v. Land Use Comm'n,* 950 F.3d 610, 630 (9th Cir. 2020) (citing *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 538–39 (2005)). However, *Penn Central* sets forth no "set formula" to determine whether a regulatory action is "'functionally equivalent to the classic taking.'" *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010). Instead, the outcome of the inquiry "depends largely upon the particular circumstances in the case at hand." *Bridge Aina Le'a, LLC*, 950 F.3d at 630 (internal quotations omitted).

### 1.     The Relevant Property is the Property as a Whole

As an initial matter, the parties disagree as to the relevant property right at issue in this case. The County contends that a takings inquiry must focus on Plaintiff's right in the entire parcel, that is, all 33 acres of the Property. (Doc. 61 at 19–20; Doc. 64 at 4–5.) Plaintiff asserts instead that the "property" taken by the County is the "right to finalize his subdivision" of a portion of the Property as set forth in the VTSM, which he contends is protected by the Housing Accountability Act and the Subdivision Map Act. (Doc. 63 at 16–23.)

As explained in *Penn Central*,

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel ***as a whole*** . . . .

438 U.S. at 130–31 (emphasis added). *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326–27 (2002) (*Penn Central* did . . . make it clear that even though multiple factors are relevant in the analysis of regulatory takings claims, in such cases we must focus on 'the parcel as a whole.'"). *See also Murr v. Wisconsin*, 582 U.S. 383, 396 (2017) ("[T]he Court has declined to limit the parcel in an artificial manner to the portion of property targeted by the challenged regulation."); *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979) ("At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety."). Following this legal authority, this Court previously held in this case that to determine whether a taking has occurred, it must evaluate

the "economic impact to Plaintiff's property *as a whole*." (Doc. 41 at 9 (emphasis added).)

Plaintiff has provided no basis to depart from the law of the case as to this issue.[11]  .He attempts to distinguish *Penn Central*'s "parcel-as-a-whole" rule by pointing to state statutes that allegedly "protect" his right to finalize the subdivision of a portion of the Property, but none of the cases on which he relies supports this distinction. (*See* Doc. 63 at 20–21.)  Plaintiff cites *Ruckelshaus v. Monsanto*, 467 U.S. 986 (1984), and *City of Oakland v. Oakland Raiders*, 32 Cal. 3d 60 (1982), but those cases involved discrete intangible personal property interests—trade secrets and contractual rights in an NFL team, respectively—not rights to use real property. *Ruckelshaus*, 467 U.S. at 1001–03; *City of Oakland*, 32 Cal. 3d at 66–67.

Plaintiff's reliance on *North Pacifica LLC v. City of Pacifica*, 234 F. Supp. 2d 1053 (N.D. Cal. 2002), is equally unavailing. (*See* Doc. 63 at 21.)  That case concerned whether the plaintiff had pleaded a cognizable property interest under the Housing Accountability Act sufficient to support a substantive due process—not takings—claim. 234 F. Supp. 2d at 1059–60. The court further considered whether the plaintiff's due process claim was preempted by the Taking Clause, found that it was, and dismissed the claim on grounds of ripeness. *Id*. at 1061–66. Nowhere did *North Pacifica* consider, much less hold, that the Housing Accountability Act (or any other statute) gave rise to a protected property interest for the purposes of a takings claim. And, because *North Pacifica* did not concern a takings claim in the first instance, it did not address or distinguish either *Penn Central* or the "parcel-as-a-whole" rule.[12]

Plaintiff does not cite, and the Court has not found, any legal authority finding a statutory entitlement to real estate development constitutes a property interest cognizable apart from the underlying land for takings purposes. In fact, case law suggests the contrary. *See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 500 (1987) (rejecting takings claim where

---

[11] *See Huynh v. Harasz*, No. 14-CV-02367-LHK, 2016 WL 2757219, at *21 (N.D. Cal. May 12, 2016) (applying the "law of the case" doctrine to preclude summary judgment on legal issues previously decided by a court on a motion to dismiss) (citing *Bollinger v. Oregon*, 172 F. App'x 770, 771 (9th Cir. 2006)). *See also Morgan v. Haviland*, No. 2:09-CV-2155 WBS KJN, 2011 WL 6153602, at *6 (E.D. Cal. Dec. 9, 2011) ("While defendant raises these arguments in the context of a summary judgment motion rather than a motion to dismiss, it has presented no grounds for departing from the law of the case.").

[12] In fact, the Ninth Circuit reversed the district court's determination that the plaintiff's substantive due process was preempted, holding that the court "incorrectly treat[ed] it as a takings claim." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 480, 484–85 (9th Cir. 2008).

state law created a "distinct segment of property," observing that "[i]t is clear . . . that our takings jurisprudence forecloses reliance on such legalistic distinctions within a bundle of property rights.") (citing *Penn Central*, 438 U.S. at 130, and *Andrus*, 444 U.S. at 65–66). *Cf. The Park at Cross Creek, LLC v. City of Malibu*, 12 Cal. App. 5th 1196, 1209 (2017) (A land use permit "is not a personal interest. It does not attach to the permittee; rather, [it] creates a right that runs with the land.").

The Court will therefore not revisit its prior determination based on pertinent, Supreme Court case authority, that the property interest at issue here is Plaintiff's right in the entire 33 acres of the Property, and not his right in the subdivision of a portion of it.

### 2. There is No Triable Question of Fact as to Economic Impact to the Property

As to the first "primary" *Penn Central* factor, Plaintiff has not presented sufficient evidence from which a finder of fact could conclude that the economic impact to the Property, when construed as a whole, rose to the level of an unconstitutional taking by the County.

Economic impact "is determined by comparing the total value of the affected property before and after the government action." *Colony Cove Properties, LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (citing *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013)); *see Keystone Bituminous Coal Ass'n*, 480 U.S. at 497 ("[O]ur test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property . . .."). "Not every diminution in property value caused by a government regulation rises to the level of an unconstitutional taking." *Colony Cove*, 888 F.3d at 451; *see MacLeod v. Santa Clara Cnty.*, 749 F.2d 541, 548 (9th Cir. 1984) ("The Supreme Court has repeatedly held that mere diminution in value, standing alone, cannot establish a taking.") (citing *Penn Central*, 438 U.S. at 131). Although there is "no litmus test [that] determines whether a taking occurred," the Ninth Circuit has made clear that diminution in property value "ranging from 75% to 92.5% does not constitute a taking," and it is "aware of no case in which a court has found a taking where diminution in value was less than 50 percent." *Id*. (citations omitted). *See also Bridge Aina Le'a, LLC*, 950 F.3d at 631 ("[O]ur value comparison again aims 'to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owners from his domain.'") (quoting *Lingle*, 544 U.S. at 539).

10

Here, Plaintiff concedes that "[t]he value of the Property at the end of the alleged taking was *comparable* to the value of the Property at the start of the alleged taking." (Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶ 17 (emphasis added).) Consistent with this concession, the undisputed evidence demonstrates that the difference in the value of the Property as a whole between the time the County rejected the VTSM for Plaintiff's failure to comply with its fire suppression demands and the withdrawal of those demands (after which Plaintiff abandoned the VTSM and successfully obtained a final parcel map from the County) was $820,000, representing only 29.8% diminution in value. (*See* Doc. 64 at 6.  *See also* Doc. 61-1, JSUF ¶ 29; Doc. 63-1, Honchariw Decl. ¶ 64; Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶¶ 9, 12.) Such diminution in value falls substantially below that which the Ninth Circuit requires to establish a taking. *See Colony Cove*, 888 F.3d at 451. There is therefore no triable question of fact as to the economic impact to the Property by the County's rejection of the VTSM.

### 3. Plaintiff Has Not Adduced Evidence of the County's Interference with Any Reasonable Distinct Investment-Backed Expectations

Plaintiff also has not adduced any evidence as to the second "primary" *Penn Central* factor, *i.e.*, that the County's rejection of the VTSM interfered with Plaintiff's "investment-backed expectations." Such expectations must be "objectively reasonable." *Colony Cove*, 888 F.3d at 452. In addition, "what is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Bridge Aina Le'a, LLC*, 950 F.3d at 634 (internal quotations and citation omitted); *see Pakdel v. City & Cnty. of San Francisco*, 636 F. Supp. 3d 1065, 1076 (N.D. Cal. 2022) ("[T]his factor must consider the extent to which the challenged regulation departs from or extends beyond past or conceivable future regulatory developments.").

Plaintiff contends that the County interfered with his "entitlement to finalize his residential development in substantial compliance with the terms and conditions attached to [the VTSM]" (Doc. 63 at 24), but such expectation was not objectively reasonable at the time the Property was acquired in 1992.[13] *See Colony Cove*, 888 F.3d at 452 ("[A] purported distinct investment-backed expectation

---

[13] Plaintiff also could not have reasonably expected the County to approve the VTSM without delay associated with litigation concerning the Conditions of Approval, as such litigation "is a normal part of the regulatory process." *Landgate, Inc. v. California Coastal Comm'n*, 17 Cal. 4th 1006, 1030, 953 P.2d 1188, 1203 (1998). *See Loewenstein v. City of Lafayette*, 103 Cal. App. 4th 718, 737, 127 Cal. Rptr. 2d 79, 93 (2002) ("A landowner can have no reasonable

11

must be objectively reasonable" in order "to form the basis for a taking claim."). At that time, Plaintiff had no entitlement to the finalization of the VTSM, as the undisputed facts show it was not submitted for approval to the County until 14 years later, in 2006.

As for approval of a tentative subdivision map generally (a necessary step in the process of subdividing property in California, Cal. Gov't Code § 64410 *et seq.*), such approval was and is a matter within the County's discretion. *See Youngblood v. Bd. of Supervisors*, 22 Cal. 3d 644, 655–56 (1978) (whether and upon what conditions to approve a proposed subdivision based on a tentative map a "discretionary decision"). As such, at the time he acquired the Property in 1992, Plaintiff would have had an "expectation, but not an assurance" that a tentative subdivision map would be approved. *See MacLeod*, 749 F.2d at 548. Under these circumstances, such expectancy is not reasonable. *See id.*; *Furey v. City of Sacramento*, 592 F. Supp. 463 (E.D. Cal. 1984), *aff'd*, 780 F.2d 1448 (9th Cir. 1986). *See also Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145, at *2 (9th Cir. Oct. 26, 2022) (noting the city's discretion to annex the property under Nevada law cuts against the plaintiff's economic expectations); *Collins v. Cnty. of Monterey*, No. 22-CV-02560-NC, 2023 WL 5743236, at *7 (N.D. Cal. Aug. 18, 2023) ("The closest Collins comes to a reasonable expectation are the recommendations to approve the rezone issued by County planning staff. However, any such expectation is quickly dispelled by the applicable regulatory backdrop and uncertain nature of the political process."), *aff'd*, No. 23-16153, 2024 WL 3066046 (9th Cir. June 20, 2024); *Diller v. Schenk*, No. CIV.A. C-83-20043WAI, 1986 WL 1788, at *19 (N.D. Cal. Feb. 6, 1986) ("[E]ven investment-backed expectations may not be reasonable if their fruition depends on discretionary acts by governmental authorities, *i.e.*, acts, like issuing building permits, whose future performance cannot be assured.") (citing *Furey* and *MacLeod*).

The undisputed facts show that the County's rejection of the VTSM did not interfere with any reasonable expectations held at the time of the acquisition of the Property. Plaintiff acquired the Property in Trust as a successor trustee from his relative, Reverend Honchariw, who purchased

---

expectation that there will be no delays or bona fide differences of opinion in the application process for development permits. Sometimes the application process must detour to the court process to resolve a genuine disagreement."). *Cf. Tahoe-Sierra Preservation Council*, 535 U.S. at 335 ("[N]ormal delays in obtaining building permits, changes in zoning ordinances, variances, and the like . . . have long been considered permissible exercises of the police power" that do not require compensation.).

it as a "long-term investment" that was expected to operate as a "family resort" and ultimately be subdivided into residential lots. (Doc. 61-1, JUSF ¶¶ 3, 5. *See also* Doc. 63 at 23.) Notwithstanding the County's rejection of the VTSM, Plaintiff was able to realize those expectations. While the litigation over the VTSM was pending in state court, Plaintiff applied for, and the County approved, a final parcel map that divided the Property into three five-acre lots and an approximately 18-acre remainder. (*Id*. ¶ 27, 28.) Plaintiff thereafter sold the lots for $1.15 million and retained "significant value" in the remainder. (*Id*. ¶ 29; Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶ 8.)

In sum, Plaintiff has failed to present evidence from which a finder of fact could reasonably conclude that the County interfered with any reasonable investment-backed expectations at the time the Property was acquired. The undisputed evidence shows otherwise.

### 4. Plaintiff Has Not Shown that the Character of the County's Action Supports a Taking

Plaintiff has not met his burden of establishing that the character of the County's rejection of the VTSM supports a finding by a factfinder that a taking occurred. He first points to the "unlawful" nature of the County's fire suppression demands (Doc. 63 at 25–26), but the alleged impermissibility of the County's actions cannot form the basis of a takings (as opposed to a substantive due process) claim. *Lingle*, 544 U.S. at 543 ("[I]f a government action is found to be impermissible . . . that is the end of the inquiry. No amount of compensation can authorize such action. . . . Whatever the merits of that claim, it does not sound under the Takings Clause."). *See Small Prop. Owners of San Francisco v. City & Cnty. of San Francisco*, 141 Cal. App. 4th 1388, 1409 (2006) ("The appropriate question for the third prong of a regulatory takings analysis . . . is the ***nature*** rather than the merit of the governmental action.) (emphasis in the original). *Accord S. Grande View Dev. Co., Inc. v. City of Alabaster, Alabama*, 1 F.4th 1299, 1311–12 (11th Cir. 2021) (*Lingle* changed the type of inquiry permitted in a just compensation claim, and abrogated our earlier precedent permitting an inquiry into the rationale behind the regulation."); *S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 277–78 (E.D.N.Y. 2022) ("[T]he character-of-the-governmental-action inquiry does not incorporate 'a means-ends test [that] asks, in essence, whether a regulation of private property is effective in achieving some legitimate public purpose . .

13

.. Nor does it 'probe[ ] the regulation's underlying validity.'") (quoting *Lingle*, 544 U.S. at 543).

Plaintiff next contends that the County's fire suppression demands "entailed a physical takeover and seizure of some of [his] property." (Doc. 63 at 26.) While "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government," *MHC Fin. Ltd. P'ship*, 714 F.3d at 1128 (quoting *Penn Central*, 438 U.S. at 124), Plaintiff has not shown that the County's requirement to provide a fire suppression system on a portion of his Property is akin to a "physical invasion" of the Property as a whole. *See Norman v. United States*, 63 Fed. Cl. 231, 286–87 (2004) (rejecting argument that regulatory imposition was "akin to a physical taking of 220.85 acres of land," finding that "[i]n light of the entire 2280-acre relevant parcel, plaintiffs' overall bundle of property rights was not diminished with respect to the larger parcel at issue."), *aff'd*, 429 F.3d 1081 (Fed. Cir. 2005). In fact, courts have found regulations requiring the installation of fire suppression measures such as sprinkler systems do not constitute a taking under *Penn Central*. *See, e.g.*, *Dyke v. Vill. of Alsip*, No. 18 C 06112, 2019 WL 13247925, at *2 (N.D. Ill. Dec. 6, 2019) ("Defendants' enforcement of the zoning ordinance which requires certain properties to maintain fire sprinklers falls far short of a regulatory taking."), *aff'd sub nom. Van Dyke v. Vill. of Alsip*, 819 F. App'x 431 (7th Cir. 2020); *Cf. Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (contrasting the government's "power to require landlords to comply with building codes and provide . . . smoke detectors, fire extinguishers, and the like" with regulations that "require the landlord to suffer the physical occupation of a portion of his building by a third party.").

**5.    The *Penn Central* Factors Do Not Support a Finding that a Taking Occurred**

Even were the "character of the governmental action" factor to weigh in favor of Plaintiff, it "is not alone a sufficient basis to find that a taking occurred." *Bridge Aina Le'a,* LLC, 950 F.3d at 636. Plaintiff has not met his burden of establishing a genuine issue of material fact that the County's rejection of the VTSM due to its fire suppression demands was an unconstitutional taking under *Penn Central*. Instead, as set forth above, the undisputed evidence demonstrates that the two primary *Penn Central* factors weigh strongly against a finding that a taking occurred. Accordingly, the Court will grant summary judgment in favor of the County on Plaintiff's takings claim.

**B.     The County is Entitled to Summary Judgment on Plaintiff's Substantive Due Process Claim**

   **1.     Plaintiff Must Meet the "Exceedingly High Burden" of Demonstrating the County's Conduct was "Egregious"**

In an action like this one, challenging land use action, "the 'irreducible minimum' of a substantive due process claim . . . is failure to advance any legitimate governmental purpose." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008)).  A plaintiff bears an "exceedingly high burden" required to show that the state actor "behaved in a constitutionally arbitrary fashion." *Id*. at 1088. As the Ninth Circuit explained, "[w]hen executive action . . . is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Id*. (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Plaintiff does not dispute that the County's acts at issue are "executive" (as opposed to "legislative") in nature.[14]  Instead, he contends that he need not meet the "exceedingly high burden" of showing the County engaged in "egregious official conduct" required by *Shanks*, because the County owed him a "ministerial duty" to approve the VTSM and thus "had no right to take 'executive' action."  (Doc. 63 at 29.)  In so doing, Plaintiff is attempting to draw a distinction between "ministerial" and "executive" acts, for which he cites no legal authority in support.[15]  In

---

[14] The law of substantive due process distinguishes between governmental acts that are "legislative" and those that are "executive" in character. *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1153 (D. Or. 2021) ("As a threshold matter for evaluating a substantive due process claim, the Court must determine whether Plaintiffs are alleging that they have been harmed by an 'executive' or a 'legislative' act.") (citing *Lewis*, 523 U.S. at 846). "Executive action generally involves 'a specific act of a governmental officer that is at issue.'" *Gunter*, 577 F. Supp. 3d at 1153 (quoting *Lewis*, 523 U.S. at 846). "Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Gunther*, 577 F. Supp. 3d at 1153 (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994)).

[15] Plaintiff's cited cases (Doc. 63 at 26–27) are directed to the issue of whether state law can create a constitutionally protected property interest—an essential element of a due process claim. *See, e.g.*, *Gerhart v. Lake Cnty., Mont*., 637 F.3d 1013, 1019 (9th Cir. 2011) ("To succeed on [his substantive due process] claim, Gerhart must first demonstrate that he was deprived of a constitutionally protected property interest. We hold that Gerhart cannot make this threshold showing.") (internal citations omitted); *Groten v. California*, 251 F.3d 844, 849–50 (9th Cir. 2001) ("We must determine whether Groten, as a first-time applicant for a temporary appraiser's license, had a property interest protected by the Due Process Clause."); *Foss v. Nat'l Marine Fisheries Serv*., 161 F.3d 584, 588 (9th Cir. 1998) ("The threshold question is whether Foss has a constitutionally protectible property interest in acquiring an IFQ permit . . . ."); *Parks v. Watson*, 716 F.2d 646, 656 (9th Cir. 1983) ("Before Klamath can prevail on [its procedural due process claims], however, it must demonstrate the threshold requirement of a constitutionally cognizable right . . . . [W]e must determine whether Klamath, as a vacation petitioner, had such an interest protected by the due process clause."). The County does not challenge the existence of a constitutionally protected property interest in this case. (*See* Doc. 64 at 11 n.7.)

fact, "ministerial or administrative activities of members of the executive branch" *are* "executive" acts. *Gunter*, 577 F. Supp. 3d at 1153. *Accord McKinney*, 20 F.3d at 1557. As such, they are subject to the egregiousness standard, *Lewis,* 523 U.S. at 846, which is an "exceedingly high burden" to meet, *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012).

### 2. Plaintiff Has Not Met This Burden

Plaintiff has failed to present sufficient material facts from which a finder of fact reasonably could conclude that the County "behaved in a constitutionally arbitrary fashion." *Shanks*, 540 F.3d at 1088. Plaintiff contends that the County's rejection of the VTSM was an "abuse of power" lacking "any reasonable justification in the service of a legitimate governmental objective" because it "acted in violation of state law designed to prevent exactly what it did." (Doc. 63 at 29.) But a violation of state law (even if committed in this case) alone does not establish a substantive due process claim. *Samson*, 683 F.3d at 1060 ("It is axiomatic . . . that not every violation of state law amounts to an infringement of constitutional rights.") (citing *Paul v. Davis*, 424 U.S. 693, 700 (1976)).

Nor does the fact that the appellate court ultimately concluded the County had "misinterpreted" the Conditions of Approval of the VTSM. (*See* Doc. 63 at 30, 31, 32–33 (citing *Honchariw v. Cty. of Stanislaus*, 51 Cal. App. 5th 243 (2020), Doc. 1 at 144–74).) "Official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary." *Shanks*, 540 F.3d at 1089. *See Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006) ("[S]ubstantive due process secures individuals from 'arbitrary' government action that rises to the level of 'egregious conduct,' not from reasonable, though possibly erroneous, legal interpretation."); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1486 (9th Cir. 1989) (Errors of judgment, mistaken actions, or even misguided actions do not violate due process.). In fact, there can be no substantive due process violation "if it is 'at least fairly debatable' that the government's conduct is rationally related to a legitimate interest." *Flint v. Cnty. of Kauai*, 521 F. Supp. 3d 978, 995 (D. Haw. 2021) (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1238 (9th Cir. 1994)). *See also Halverson v. Skagit Cnty.,* 42 F.3d 1257, 1262 (9th Cir. 1994) (explaining that plaintiffs in substantive due process claims "shoulder [the] heavy burden" of demonstrating "the irrational nature

of the County's actions by showing that the County could have had no legitimate reason for its decision"). Under these circumstances, courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir. 1994) (emphasis in original).

Here, Plaintiff cannot meet his "heavy burden" of demonstrating that the County's rejection of the VTSM was devoid of a legitimate governmental interest. Plaintiff claims that the County had "no justification" for their fire suppression demands (Doc. 63 at 29), but at the same time does not dispute that County staff were "acutely aware that wildfires posed a significant risk to rural and semi-rural communities at the time of the dispute over the meaning of the [C]onditions of [A]pproval" and believed that requiring Plaintiff, not KFCSD, to "provide functioning fire hydrants, including a water supply capable of providing fire suppression flows" prior to approval of the VTSM was "in order to protect the future residents of the subdivision from life safety hazards, including wildfire." (Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶¶ 4–5.) The trial court in *Honchariw v. County of Stanislaus* expressly emphasized the County's interest in fire safety, noting that the parties' dispute over the Conditions of Approval "involves a clear issue of public safety: fire suppression . . . . This dispute is not about esthetics; it is a life or death concern." (Doc. 1 at 66.) The appellate court, which sided with Plaintiff, nevertheless also acknowledged the County's "safety concerns related to fire." (*See Honchariw v. Cty. of Stanislaus*, 51 Cal. App. 5th 243 (2020), Doc. 1 at 133.)

Plaintiff's proffered statements made by County personnel that KFCSD would supply the water for fire suppression (*see* Doc. 63-1, Honchariw Decl. ¶¶ 48–49) also fail to create a genuine issue of material fact as to whether the County "*could* have had a legitimate reason" for insisting that Plaintiff do so instead. This is particularly true in view of the uncontroverted evidence that the KFCSD water system was "small" and "antiquated," with "substandard" distribution facilities that produced "well under standard fire flows of 1000 gpm for residential subdivision systems served by municipal water districts." (Doc. 63-1, JSUF ¶13.) It is therefore "at least fairly debatable" that the County's fire suppression demands, even if legally erroneous, were rationally related to the legitimate interest in protecting the subdivision's residents against wildfires.

17

In this way both *Bateson v. Geisse* and *Ali v. City of Los Angeles*, relied on by Plaintiff (*see* Doc. 63 at 27, 32), are inapposite. In *Bateson*, the city council voted not to issue a building permit even though the applicant had satisfied all the requirements for the permit. 857 F.2d 1300, 1302 (9th Cir. 1988). It did so despite the city attorney's warning that the decision would almost certainly be overturned in court and would expose the city to substantial civil liability. *Id*. The Ninth Circuit held that the city council's vote was an "arbitrary administration of the local regulations, which single[d] out one individual to be treated discriminatorily" and constituted a deprivation of substantive due process. *Id*. at 1303. In *Bateson*, it was undisputed that a condominium development complied with the zoning classification applicable to Bateson's property; in this case, the meaning of the Conditions of Approval related to fire suppression infrastructure was unsettled at the time the County rejected the VTSM. Further, Plaintiff has not adduced any evidence of bad faith by the County in this case. To the contrary, it is undisputed that Frederic Clark, the County staff member responsible for reviewing the VTSM for compliance with the Conditions of Approval, interpreted those conditions "in good faith"; that he "had no interest in obstructing the project"; and that "[n]obody at the County suggested to [him] that he obstruct the project." (Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶¶ 3, 14–16.)

In *Ali*, the appellate court observed that because the illegality of the City's action was apparent from case authority existing before the City initially withheld the permit, its position was "'so unreasonable from a legal standpoint' . . . as to be arbitrary, not in furtherance of any legitimate governmental objective, and for no other purpose than to delay any development . . .." 77 Cal. App. 4th 246, 255 (1999). Here, the County's rejection of the VTSM was not objectively unreasonable, particularly given its argument regarding the purpose of the Conditions of Approval was endorsed by the trial court in *Honchariw v. Cty. of Stanislaus*. *See Allegretti & Co. v. Cnty. of Imperial*, 138 Cal. App. 4th 1261, 1284 (2006) (distinguishing *Ali*).

Because Plaintiff has failed to meet his "exceedingly high burden" of putting forth evidence sufficient to establish a substantive due process violation, the Court finds that the County is entitled

18

to summary judgment on this claim.[16]

## V. CONCLUSION AND ORDER

For the foregoing reasons, Defendant County of Stanislaus's motion for summary judgment (Doc. 61) is GRANTED. Judgment shall be entered in favor of Defendant. The Clerk of Court is directed to vacate any pending deadlines and to close this case.

IT IS SO ORDERED.

Dated:  **August 21, 2024**                 /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[16] Plaintiff asserts that the County has demonstrated a "history of obstruction" related to the VTSM, and specifically points to the Board's "unlawful disapproval" of the VTSM in 2009. (*See* Doc. 63 at 33–34.) But, as noted above, Plaintiff concedes that, at least as to the present dispute that is relevant here, County staff "had no interest in obstructing the project" and that "[n]obody at the County suggested" that Plaintiff's project be "obstruct[ed.]" (Doc. 63-2, Plt.'s Resp. to Def.'s SSUF ¶¶ 3, 14–16.) Regarding the Board's 2009 denial of the VTSM, it is not before the Court, and Plaintiff's attempt to assert a substantive due process claim related to it was unsuccessful. *See Honchariw v. Cnty. of Stanislaus*, 530 F. Supp. 3d 939, 952 (E.D. Cal. 2021) (granting motion for judgment on the pleadings), *aff'd*, No. 21-15801, 2022 WL 522287 (9th Cir. Feb. 22, 2022). The Court will not revisit that ruling here.